Hugo Bob HUBSCH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16616.

United States Court of Appeals
Fifth Circuit.

June 30, 1958.

Lawrence I. Hollander, Miami, Fla., for appellant.

O. B. Cline, Jr., Asst. U. S. Atty., Miami, Fla., James L. Guilmartin, U. S. Atty. for Southern District of Fla., Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The appellant was charged by a two-count indictment with causing two falsely made and forged checks to be transported in interstate commerce, knowing the same to have been falsely made and forged. The portion of the Federal law which the appellant was accused of violating is as follows:

> "Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited * * *.
>
> "Shall be fined not more than $10,-000 or imprisoned not more than ten years, or both." 18 U.S.C.A. § 2314.

The appellant received treatment at the Halifax District Hospital, Daytona Beach, Florida, in November, 1953. The appellant represented himself as being Alfred Weinstein. In payment for the treatment the appellant gave a check signed A. A. Weinstein in the amount of $4.80, drawn on the Bank of Georgia, Atlanta, Georgia. The check was returned by the Atlanta bank with the notation that it was "Unable to locate". This check was the subject matter of the first count of the indictment.

During the same month the appellant selected for purchase a Masonic ring at a jewelry store in Miami, Florida. He ask-

ed the store proprietor if he could pay for the ring with a check and was told that he could if he had some credentials. The appellant said he was a Mason and a Shriner. He produced from a billfold several Masonic cards from Atlanta with the name Weinstein on them. The appellant gave the jeweler a check for $169.95, also drawn on the Bank of Georgia. This check was also returned by the bank on which it was drawn with the notation "Unable to locate". This check was the subject matter of the second count of the indictment. The appellant was tried by the court without a jury and found guilty on both counts. He was given a sentence of two years imprisonment and a fine of $500 on the first count. On the second count the appellant was placed on probation for three years following the imprisonment. From the judgment of conviction and sentence this appeal has been taken.

The appellant has questioned the sufficiency of the indictment on two grounds. The first is that the indictment charged him with causing the checks to be transported in interstate commerce, whereas the part of 18 U.S.C.A. § 2314 here applicable and above quoted, makes it a crime to transport such securities in interstate commerce but does not make it an offense to cause them to be so transported. The argument overlooks 18 U.S.C.A. § 2(b), which is of general application and reads as follows: "Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

This Court has determined that causing interstate transportation is made a crime under 18 U.S.C.A. § 2314. Pereira v. United States, 5 Cir., 1953, 202 F.2d 830, affirmed 347 U.S. 1, 74 S. Ct. 358, 98 L.Ed. 435. Inasmuch as the indictment of the appellant did not specifically charge that causing of the interstate transportation was willful, it is pertinent to refer to Londos v. United States, 5 Cir., 1957, 240 F.2d 1, which holds that the indictment is nevertheless sufficient. It is now settled that 18 U.S. C.A. § 2314, is violated by a person knowingly cashing in one state a forged check drawn upon a bank in another state. United States v. Sheridan, 329 U. S. 379, 67 S.Ct. 332, 91 L.Ed. 359; Rickey v. United States, 5 Cir., 1957, 242 F.2d 583; United States v. Taylor, 2 Cir., 1954, 217 F.2d 397.

The second contention concerning the indictment is that no offense was alleged because it charged that appellant, "alias A. A. Weinstein", caused the interstate transportation of two falsely made and forged checks signed "A. A. Weinstein", knowing same to have been falsely made and forged. The argument is that an alias is, by definition, a name by which a person is "otherwise called", so that the making of a writing in that name is in the person's own name and is not a forgery. Support for the position urged is not lacking in a number of decisions of state courts. See 49 A.L.R.2d 852, 868–869, 888–889. Under the so-called narrow rule defining forgery, hereinafter discussed, the strict and technical doctrine of construction of the indictment for which the appellant contends might be proper. But we reject the narrow doctrine and hold that, under the circumstances herein stated, a forgery may be committed by the fraudulent use of an assumed or fictitious name. Since we so hold, we think it follows that the indictment did not fail to charge an offense against the United States where it was charged that Hubsch, alias Weinstein, did unlawfully and with fraudulent intent cause falsely made and forged checks to be transported in interstate commerce. See Lyman v. State, 136 Md. 40, 109 A. 548, 9 A.L.R. 401.

Similar to the question just discussed but bearing upon the question of guilt rather than the sufficiency of the indictment, is the appellant's contention that, having represented himself as Weinstein, that name was his alias and therefore the checks signed by appellant in the name of Weinstein were neither falsely made nor forged.

Forgery has been generally defined as "the false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability." 37 C.J.S. Forgery § 1, p. 31; 23 Am.Jur. 676, Forgery § 2; 2 Wharton's Criminal Law & Procedure 396, § 621. The case of Green v. State of Florida, Fla.1954, 72 So.2d 645, 49 A.L.R.2d 847, is the subject of an annotation upon whether forgery may be committed by the signing of an assumed or fictitious name. 49 A.L.R.2d 852. The annotator thus summarizes the applicable rules:

"The generally accepted rule is that forgery may be committed through the use of a fictitious or assumed name, and while a considerable number of cases seem to have been decided primarily on the basis of this rule alone, other cases, while recognizing the rule, seem to turn upon the application by the court to the facts of the case of the 'broad' definition or the 'narrow' definition of forgery. Under the broad definition, forgery may be committed by the use of a fictitious name, with intent to defraud, so long as the instrument in question has a sufficient appearance of validity upon its face to enable it to be used to the prejudice of another, while under the narrow definition, the name signed to the instrument must purport to be the signature of some person other than the one actually signing it. Thus, under the broad definition, forgery may be committed by signing the name of a fictitious person in the presence of the person defrauded, the other requisites for forgery under such definition being present, while under the narrow definition, such is not the case." 49 A.L.R.2d 854.

It has been held that the signing of a fictitious name is not a forgery if it is not intended that such signature shall be taken as the genuine signature of another person. Greathouse v. United States, 4 Cir., 1948, 170 F.2d 512. Such is the narrow rule as to forgery. Under the so-called board rule it is said that forgery may be committed by using an assumed or fictitious name in signing the instrument when this is done with the intent to defraud. United States v. Turner 7 Pet. 132, 32 U.S. 132, 8 L.Ed. 633; Milton v. United States, 1940, 71 App. D.C. 394, 110 F.2d 556; Rowley v. United States, 8 Cir., 1951, 191 F.2d 949; United States v. Greever, D.C.D.C.1953, 116 F.Supp. 755. In the case last cited, it is suggested that the decisions may "be harmonized on the rationale, adopted in the English case of Reg. v. Martin (1879), 14 Cox.Crim.Cas. 375, 5 Q.B.Div. 34, that though there may be fraud and false pretenses, there has been no forgery where the payee in accepting the check has relied upon and given credit to the person who has signed and presented the check, and not the signature itself. It is only in a case where reliance is placed on the signature as creating a valid obligation, not on the person who presents the check, that a forgery has been committed."

Reg. v. Martin, cited in the Greever case, cites and distinguishes Rex v. Dunn, 1765, 1 Leach, C.L. 57, where a woman, using a fictitious assumed name represented herself as the widow and executrix of a deceased seaman and received an advance of his wages upon a note signed by her in the assumed name. A conviction for forgery was affirmed. In a Georgia case a man using an assumed and fictitious name falsely represented himself as the son of an English Nobleman who was depositing a large sum to the credit of his self-styled son. A bill of exchange, signed in the fictitious name and drawn against the non-existing deposit, was held to be a forgery. Lascelles v. State, 90 Ga. 347, 16 S.E. 945, 35 Am.St.Rep. 216, affirmed 148 U.S. 537, 13 S.Ct. 687, 37 L.Ed. 549.

We do not hold that if a person assumes a fictitious name as an alias, and it neither appears that the name assumed

was a factor in procuring credit upon the instrument signed with the fictitious name nor that the alias was previously assumed for a dishonest purpose, the signing of the alias or assumed name would be a forgery. However, where a person not only takes an assumed name but uses that name to designate a fictional person with characteristics, personality and a semblance of identity, the use of the fictitious name as an instrument of fraud in the impersonation of the fictional person is as much a forgery as though the fictional character was real.

There is nothing in the record to show that there was any reliance placed by the Halifax District Hospital upon the name of Weinstein or upon any character or personality associated with the name. It does not appear that the Hospital would have declined to accept the check had it been signed by Hubsch in his own name or in any other name. So far as appears, the name Weinstein on the check to the Hospital was an alias and nothing more. Such may not have been the situation with respect to the check for $169.95 given to the jeweler. There Hubsch negotiated for the purchase of a Masonic ring and represented himself as Weinstein, a holder of several Masonic cards from Atlanta. It may then be that Hubsch created a fictional personality of Weinstein, the Mason who desired to purchase the Masonic ring, and on the faith and credit of a check purporting to be that of Weinstein the Mason the check was accepted. If such be the fact then, we conclude, there had been a forgery. Since the court found Hubsch guilty on both counts, it is apparent that the court did not apply the rule as we have announced it. We think the evidence as submitted required an acquittal on the first count of the indictment based upon the check to the Hospital. As to count two, a new trial should be had so that there may be a determination of guilt or innocence in accordance herewith. For a new trial the judgment is

Reversed and remanded.