**Harold Franklin EDGE, Jr., Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 17691.**

United States Court of Appeals
Fifth Circuit.

Sept. 25, 1959.

John C. Tyler, Atlanta, Ga., for appellant.

Charles D. Read, Jr., Acting U. S. Atty., E. Ralph Ivey, Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before RIVES, Chief Judge, and HUTCHESON and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The appellant was convicted of causing "a falsely made and forged security" to be transported in interstate commerce, knowing the instrument to have been falsely made and forged, in violation of 18 U.S.C.A. § 2314.[1] He received a sentence of eighteen months. We affirm.

Harold Franklin Edge, Jr., the appellant, registered in the Hotel Georgian Terrace, in Atlanta, Georgia, on September 15, 1958, under the fictitious name of "R. E. Spaine". He had stayed at the same hotel within a month before this and had registered under the same name of "R. E. Spaine". On September 16, 1958, Edge checked out of the hotel. He gave the manager a check for $75 to pay his hotel bill of $61 and received the balance in cash. The check was made payable to the Hotel Georgian Terrace, drawn on the Munsey Trust Co. in Washington, D. C., and signed "R. E. Spaine". There was no account in the name of R. E. Spaine in the Munsey Trust Co. in Washington, D. C. The check was transported in interstate commerce from Atlanta, Georgia, to Washington, D. C.

The only question before this Court is whether, under the undisputed facts—the defendant did not testify—the signing of a fictitious name to a check constitutes the instrument a "falsely made or forged * * * security" within the meaning of Section 2314 of Title 18 United States Code.

■ Forgery is not defined in the statute. Forgery is generally defined as "the false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy, or the foundation of legal liability". 37 C.J.S. Forgery § 1, quoted in Hubsch v. United States, 5 Cir., 1958, 256 F.2d 820, 823. It has been held that "forged" and "falsely made" as used in the statute are "homogeneous, partaking of each other * * * synonymously construed to describe a spurious or fictitious making as distinguished from a false or fraudulent statement". Marteney v. United States, 10 Cir., 1954, 216 F.2d 760, 763.

■ In Hubsch this Court stated negatively:

"We do not hold that if a person assumes a fictitious name as an alias, and it neither appears that the name assumed was a factor in procuring credit upon the instrument signed with the fictitious name nor that the alias was previously assumed for a dishonest purpose, the signing of the alias or assumed name would be a forgery." 256 F.2d at pages 823–824.

We went on to lay down the positive rule controlling there and here:

"However, where a person not only takes an assumed name but uses that name to designate a fictional person with characteristics, personality and a semblance of identity, the use of the fictitious name as an instrument of fraud in the impersonation of the fictional person is as much a forgery as though the fictional character was real." 256 F.2d at page 824.

■ The evidence shows, within the positive rule set forth in Hubsch, that Edge, with intent to defraud, created a fictional personality under the name of "R. E. Spaine". The check was cashed after Edge's second stay at the hotel.

1. "Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities, knowing the same to have been falsely made, forged, altered, or counterfeited * * * shall be fined not more than $10,000 or imprisoned not more than ten years, or both." 18 U.S.C.A. § 2314.

On both occasions when Edge was at the hotel he spoke with the manager, Mr. Holladay, representing that he was "R. E. Spaine" of Washington, D. C. Edge told Mr. Holladay that he (R. E. Spaine) had been in Florida with his children and had spent some time at Daytona Beach with his family. The manager's testimony leaves no doubt that he cashed the check because of his reliance upon the reality, the genuineness, the integrity of the fictional "Spaine". When questioned as to why he cashed the check without "any identification such as an American Express Card", Mr. Holladay testified:

"Q. Do you recall how long you talked with Mr. Edge, Sir? A. "I don't recall the exact number of minutes, Sir. We had a conversation.

"Q. Do you recall what the conversation was about? A. Yes, Sir.

"Q. What was it? A. In fact, if I may put this in, that's one reason why, you say, Mr. Edge—now, of course, you said Mr. Edge. I don't know him as Mr. Edge, sir. I talked to a Mr. Spaine, who is the gentleman seated there at your table. I recall the conversation because he had told me he had been down in Florida with his children and had spent some time at Daytona Beach. We stood there at the desk and discussed the matter. It was the second time that he had been in the hotel within a month and we had had conversations on each time. As I said, sir, I knew him as Mr. Spaine."

On the undisputed evidence before us, unlike the factual situation in the Hubsch case,[2] it is clear that the hotel cashed Edge's check in reliance upon the name "R. E. Spaine" and the reality

of the fictional personality attached to that name.

The verdict and judgment were right. The judgment is

Affirmed.

---

2. "There is nothing in the record to show that there was any reliance placed by the Halifax District Hospital upon the name of Weinstein or upon any character or personality associated with the name." Hubsch v. United States, 5 Cir., 1958, 256 F.2d 820, 824.