UNITED STATES of America, Plaintiff-Appellee,

v.

Michael Eugene PRICE and James Terrence Price, Defendants-Appellants.

Nos. 80–1595, 80–1765.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1981.

Decided Aug. 19, 1981.

Rehearing and Rehearing En Banc Denied Jan. 13, 1982.

---

Thomas J. Lannen, Jan Lawrence Handzlik, Stilz, Boyd, Levine & Handzlik, Los Angeles, Cal., for defendants-appellants.

Frederick M. Flam, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before KENNEDY and ANDERSON, Circuit Judges, and MURPHY,* Senior District Judge.

* Honorable Thomas F. Murphy, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. Section 2314 states in relevant part:
   Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or

KENNEDY, Circuit Judge:

This case requires us to determine the meaning of the terms "falsely made" and "forged" in a criminal statute. James T. Price was indicted for the interstate transportation of falsely made or forged securities in violation of 18 U.S.C. § 2314,[1] and Michael E. Price was charged with aiding and abetting the crime. 18 U.S.C. § 2. Both were convicted after a bench trial, and they join in this appeal. We affirm.

The case was tried largely by stipulation, and the essential facts were not in serious dispute. Michael lived in Texas and James, his older brother, lived in California. They exploited their relation and the distance between them for a scheme that gave rise to the criminal charges. With his older brother's cooperation, Michael had procured a driver's license that bore Michael's own picture but James' name. At James' request, Michael used the altered license to open a Texas bank account. Michael represented himself to be James Price and, as identification, showed the license to the bank employee in the new accounts department. Michael claimed to be the sole signatory for the account, signed the signature card using James' name, and did not represent he was acting for another.

Michael sent a book of checks to James in California, the checks being imprinted with James' name but with Michael's Texas address and telephone number. James drew eleven checks on the Texas account totalling $28,500 and deposited them in various banks and savings and loan associations in the Los Angeles area. On each check James signed his correct name. Before those checks had cleared, James withdrew most of the funds from the California institutions. The checks were overdrafts which the Texas bank refused to honor. When the bank informed Michael of the over-

counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; . . .
. . . .
Shall be fined not more than $10,000 or imprisoned not more than ten years, or both. *Id.*

drafts, Michael, still pretending to be James Price, reported the checks stolen or lost and closed the account. Michael then opened a new account at the same Texas bank, again using his brother's name. The questions here are whether James can be convicted for transporting a falsely made or forged document when the name he signed was his own, and whether Michael is an aider or abettor of that offense. The argument on appeal by the brothers Price is that, since the checks bore the genuine signature of the true James, they were not forged or falsely made as those terms are used in section 2314. We disagree.

■ Much of the argument in the case has been directed to the meaning of the term false making, the parties disputing whether the term is synonymous with forgery or of different application.[2] The appellants cite *Wright v. United States*, 172 F.2d 310, 311 (9th Cir. 1949) for the proposition that the terms are synonymous. We doubt that the terms forgery and false making are precise semantic equivalents; and the holding of *Wright* that false making is the conduct element of forgery, and not its equivalent, is consistent with that view.[3] *Id.* But further elaboration of the differences between the terms is unnecessary here because we hold that the conduct of James was forgery in the ordinary meaning of that term, and that it was false making as well.

■ In general, forgery is the false making, with the intent to defraud, of a document which is not what it purports to be, as distinct from a document which is genuine but nevertheless contains a term or representation known to be false. *See id.* The distinction is as between a document signed by a third person using the signature of another (a forgery) and a document signed by an authorized person but containing a promise known to be false that does not bear on the authenticity of the instrument (not a forgery). We acknowledge that the controlling categories between acts that are forgeries and acts that are not are neither as simple or as neat, even in a metaphysical sense, as the summary statement given here. As is true with most interesting legal points, the close cases present questions of degree rather than kind. The distinction given here, however, suffices for the purposes of resolving this case.

■ Forgery contemplates a writing which falsely purports to be the writing of another person than the actual maker. *Greathouse v. United States*, 170 F.2d 512, 514 (4th Cir. 1948). Signing one's own name with the intent that the writing be received as written by another person, or impersonating another in the signature of an instrument, *see Wilson v. State*, 220 Tenn. 565, 421 S.W.2d 91 (1967), or signing in such a way as to make the writing purport to be that of another, *People v. Levitan*, 49 N.Y.2d 87, 399 N.E.2d 1199, 424 N.Y.S.2d 179 (1980), are all acts of forgery.[4] Similarly, the creation of a fictitious identity and the signing of the name of the fictitious person with fraudulent purpose may be considered forgery or false making. *See, e. g., United States v. Seay*, 518 F.2d

---

2. Both the government and the trial judge were convinced that one who signed his own name could not commit forgery. As a consequence, appellants contend false making is synonymous with forgery; while the government argues that false making is a broader concept than forgery.

3. The *Wright* distinction makes good sense in the section 2314 context in view of the fact that the fraudulent intent required for a section 2314 violation attaches to the transportation of the security and not to the creation or alteration of the security.

4. The state authorities that we have cited are factually similar to this case, and, although dealing with the application of state statutes, they locate the source of the principle in issue in the common law. We have reviewed various federal authorities cited for the broad proposition that there is no forgery where one signs one's own name, *see* Annot., 4 A.L.R. Fed. 793, 803–04 (1970 & Supp.1980), and have found them to be factually inapposite. *See, e. g., United States v. Hagerty*, 561 F.2d 1197 (5th Cir. 1977) (own name signed without effort to impersonate); *Greathouse v. United States*, 170 F.2d 512 (4th Cir. 1948) (agency authorization case, no impersonation).

646, 647 (7th Cir. 1965); *Hubsch v. United States*, 256 F.2d 820 (5th Cir. 1958).[5]

The instant case was forgery under these definitions. Through the malevolent auspices of Michael Price, James created a fictitious personality with his own name and vital statistics, but with the address, face, and signature of Michael. James received from Michael the checks of a fictitious person, even though they bore James' name. He proceeded to sign his own name both with the intent and the effect of making the writing purport to be that of a fictitious person. The scheme was perhaps unusual in that it depended on the cooperation of two persons, each of whom assisted the other in misrepresenting part of the facts required for fraud. Michael Price provided human attributes to which the false James Price identity could attach. James Price would sign his own name and use legitimate identification while appearing to be the one who opened the Texas bank account. James, had he merely acquired and cashed the checks of a third person who also had the name James Price, would have been guilty of forgery for signing such checks. We see no reason to arrive at a different result in this case where, through the offices of another, the defendant acquired extra safety by creating an alter ego who happened to have an identical name.

■ The trial judge held that the checks in question had been falsely made.[6] While as indicated we do not think the terms are in all respects equivalent, they do converge so that, for the reasons given above, there was both a forgery and false making in this case.

Finally, the appellants cite *Wright v. United States*, 172 F.2d 310 (9th Cir. 1949) for the further proposition that there can be neither forgery nor false making when one signs his true name to a check. *Wright* does not so hold. The case stands simply for the proposition that a check is not falsely made or forged merely because there are insufficient funds to cover it. Neither *Wright* nor authorities from other circuits tendered by the appellants discuss instances such as this, where despite the fact that the actual maker signed with his true name he was not the purported maker, but rather was using an identity which was both miscast and concealed. *See, e. g., United States v. Jones*, 553 F.2d 351, 356 (4th Cir.), *cert. denied*, 431 U.S. 968, 97 S.Ct. 2928, 53 L.Ed.2d 1064 (1977); *Melvin v. United States*, 316 F.2d 647 (7th Cir. 1963); *Martyn v. United States*, 176 F.2d 609 (8th Cir. 1949); *Greathouse v. United States*, 170 F.2d 512 (4th Cir. 1948).

The judgments of conviction are AFFIRMED.

5. Some courts have distinguished alias cases from fictitious identity cases. In the alias case, the maker who simply has adopted a name other than his real name and who is known by that name by his payees may not be liable for forgery. *See United States v. Crim*, 527 F.2d 289 (10th Cir. 1975), *cert. denied*, 425 U.S. 905, 96 S.Ct. 1497, 47 L.Ed.2d 755 (1976). The maker manipulating a fictitious identity, however, is attempting to create a separate "person" with characteristics, personality, and a semblance of identity, and may be viewed as a forger. *See Hubsch, supra*, 256 F.2d at 824. This court, without elaborating on the facts, and without reference to the alias concept, has held that proof that a fictitious signature was not authorized for a given bank account was sufficient to prove false making in what apparently was a simple fictitious signature case. *See United States v. Axtman*, 574 F.2d 474 (9th Cir. 1978).

6. The transcript indicates that the trial court determined that James' acts constituted false making, but not forgery. The judgment and commitment, however, implies that guilt was based on forgery. This error, unraised by the parties, and obviously clerical, is harmless. *See United States v. Weiner*, 418 F.2d 849 (5th Cir. 1969).