STATE of Iowa, Appellee,

v.

Carlos Fontez CALHOUN, Appellant.

No. 99–0911.

Supreme Court of Iowa.

Oct. 11, 2000.

Linda Del Gallo, State Appellate Defender, and Shellie L. Knipfer, Assistant State Appellate Defender, and Carlos Calhoun, Newton, pro se, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Joel Dalrymple, Assistant County Attorney, for appellee.

CARTER, Justice.

Defendant, Carlos Fontez Calhoun, appeals from his conviction of four counts of forgery. He contends that his conduct did not meet the statutory definition of that crime. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

The evidence reveals that Calhoun opened a checking account at Norwest Bank in the name of a fictitious business, Midwest Security Service. In opening the account, he used the name of William Scott. In another transaction he opened a joint checking account at John Deere Credit Union in the names of Andrea Anderson and William Lee Johnson. The purpose of opening the credit union account was to facilitate the cashing of checks at offices of the credit union. Calhoun drew checks on the Norwest account denominated as payroll checks of Midwest Security Service. These checks were made payable to William Lee Johnson. He then endorsed the checks as William Lee Johnson and cashed them at four different John Deere Credit Union outlets. Because there were insufficient funds in the account, all of these checks were dishonored by Norwest Bank.

The statute under which defendant is charged provides:

A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that the person is facilitating a fraud or injury to be perpetrated by anyone, the person does any of the following:

. . . .

*b.* Makes, completes, executes, authenticates, issues, or transfers a writing *so that it purports to be the act of another who did not authorize that act,* or so that it purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or so that it purports to be a copy of an original when no such original existed.

*c.* Utters a writing which the person knows to be forged in a manner specified in paragraph "*a*" or "*b*".

Iowa Code § 715A.2(1)(b), (c) (1997) (emphasis added).

Seizing on the language of the statute that we have italicized, Calhoun argues that his conduct in issuing the four checks did not purport to be the act of another who did not authorize the act. He urges that the checks were authentic instruments because he was the person who created and controlled the account on which they were written. Although this argument gives us pause with respect to whether his actions in drawing the checks amounted to forgery, we are convinced that his actions in endorsing the checks did constitute forgery.

The drafters of the Model Penal Code, on which the Iowa forgery statute is patterned, recognized that a substantial over-

lap exists between the crime of forgery and theft by misrepresentation. Model Penal Code § 224.1 cmt. 2, at 283 (1980). The comments to the Code even suggest that the crime of forgery might be redundant because acts that constitute forgery may also be punished as theft. *Id.* In opting to retain forgery as an independent crime, the drafters admit that they were motivated largely by the extent to which the crime has become historically embedded in popular understanding. *Id.* at 284.

The Model Penal Code drafters endeavored to draw the line between forgery and other fraudulent uses of documents that do not constitute forgery based on whether the act affects the genuineness of the instrument. Model Penal Code § 224.1 cmt. 4, at 289. Calhoun argues that the checks at issue in the present case were genuine because they would have been honored had there been sufficient funds in the account. That argument has some merit with respect to the obligation created by drawing the checks.

In discussing the problems arising from the use of fictitious names, the Code commentary seeks to illustrate the issue by reference to the decision in *Hubsch v. United States,* 256 F.2d 820 (5th Cir.1958). The defendant in that case was prosecuted on two counts of forgery. The first involved a check given to a Florida hospital in which he was registered under a fictitious name. When he left the hospital, he paid his bill with a check that he signed with the same fictitious name under which he was registered. The second count involved the purchase of a Masonic ring at a Florida jewelry store. The defendant had produced several Masonic cards containing a fictitious name and purporting to show that he, acting under that name, was a member of the Masons in Atlanta, Georgia. The store accepted his check, which he signed using the same name. In both instances, the checks were worthless and were issued for fraudulent purposes.

The court in *Hubsch* held that the defendant should have been acquitted on the hospital transaction but not on the jewelry store transaction. Its reasoning was that, with respect to the hospital check, there was no reliance by the hospital on the name used by the defendant nor upon the character or personality associated with that name. The check would have been accepted, so far as it appeared, even if the defendant had signed his own name. With respect to the jewelry store check, on the other hand, the defendant sought to create a fictitious personality of a Mason from Atlanta interested in purchasing a Masonic ring. Because the check was accepted in reliance upon those misrepresentations, the court found that a forgery prosecution was appropriate.

If we follow the reasoning of the federal court in *Hubsch,* we must affirm defendant's convictions. In so doing, we can disregard the circumstances surrounding the drawing of the check on the fictitious account and uphold the prosecution based on the endorsement of the check in a fictitious name. That name corresponded with the false identity Calhoun had established by opening an account in that name with the credit union. So, just as in the *Hubsch* case, the check was accepted in reliance on a fictitious personality.

The comments accompanying the Model Penal Code suggest that the hospital transaction in the *Hubsch* scenario also constituted a forgery. In analyzing how the statutory reference to a writing "that purports to be the act of another who did not authorize that act" is to be applied to fictitious names, the Code commentary states as follows:

The case would turn on the meaning of the words "so that it purports to be the act of another who did not authorize that act." These words could be taken to embrace the distinction advanced in the *Hubsch* case, *i.e.,* to turn liability on whether the defendant's signature "purported" to be his own or whether he created an independent personality and "purported" to be that person. It does not unduly strain the language, however,

to conclude that any use of a fictitious name necessarily "purports" to be the act of another who, by definition, could not have authorized the act. The misrepresentation necessarily encompassed by the word "purports" is adequately supplied by the fraudulent intent that must, of course, independently be shown.

Model Penal Code § 224.1 cmt. 4, at 297 n. 61. The concept that forgery may occur when one signs a fictitious name to a check is not novel. It has been recognized in a prior decision of this court. *See State v. Meeks*, 245 Iowa 1231, 1236, 65 N.W.2d 76, 79 (Iowa 1954). However, this court has not dealt with a situation in which the drawer of a check used a fictitious name on an account opened by drawer and subject to the drawer's control. A New Jersey court has held based on a slightly different statute that in such a circumstance the use of a fictitious name in the drawing of the check is not forgery. *State v. Berko*, 75 N.J.Super. 283, 183 A.2d 118, 123–24 (Ct. App.Div.1962).

In *State v. Brooks*, 555 N.W.2d 446 (Iowa 1996), we observed the fact that Iowa's forgery statute is identical to section 224.1 of the Model Penal Code. Based on that circumstance, we declared that, "[b]ecause the Iowa legislature chose to adopt the Model Penal Code language, we presume it intended section 715A.2 to have the meaning explained in the comments to the model forgery provision." *Brooks*, 555 N.W.2d at 450. However, in the model code's reference to *Hubsch* and in the other examples given in the comments on the use of fictitious names, the names had not been attached to an instrument drawn on an account opened by and subject to the control of the drawer of the instrument.

In endorsing the check, Calhoun was assuming a new legal obligation to the credit union separate and apart from the obligation of the drawer of the check. With respect to the obligation of the endorser, the instrument was not genuine. In *State v. Czarnecki*, 615 N.W.2d 672 (Wis.Ct.App.2000), the court upheld a forgery conviction based on endorsing a check with a fictitious name. In so doing, the court stated:

> Because Czarnecki adopted his assumed name to further his confidence scam, the purpose the assumed name served was to avoid responsibility for his illegal acts by hindering and delaying his identification once the scam was revealed. Using an assumed name to endorse the checks was a false act because it purported to be what it was not.

*Czarnecki*, 615 N.W.2d at 677. Similar considerations exist with respect to Calhoun's endorsement of the checks at issue in the present case.

Because we are convinced that Calhoun was guilty of forgery in endorsing the four checks at issue in the present case, we need not consider whether his drawing of those instruments also constituted forgery. For the reasons stated, the judgment of the district court is affirmed.

**AFFIRMED.**

All justices concur except SNELL, J., who takes no part.