STATE of Iowa, Appellee,

v.

Gabriel Rojas ACEVEDO, Appellant.

No. 03–1482.

Supreme Court of Iowa.

Sept. 16, 2005.

J. Wm. Moreland, South Sioux City, NE, and Delbert D. Rowse, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Thomas S. Mullin, County Attorney, and Mark A. Campbell, Assistant County Attorney, for appellee.

CARTER, Justice.

Defendant, Gabriel Rojas Acevedo, convicted of forgery in violation of Iowa Code section 715A.2(2)(b) (2001); third-degree fraudulent practice in violation of Iowa Code sections 321.97, 714.8(10), and 714.11; and tampering with records in violation of Iowa Code section 715A.5, appeals, challenging the sufficiency of the evidence to sustain his convictions. After reviewing the record and considering the arguments presented, we affirm the district court with respect to all three convictions.

The evidence presented at trial revealed the following facts. On October 19, 2002, defendant, who had been stopped for a traffic offense, was arrested when the officer determined that he had been operating a motor vehicle without a valid driver's license and without proof of insurance. When he was booked into the Woodbury County jail, he gave the name of Adrian Alonzo. The scheduled bond for his release was $650. Later that same day, a man named Sanchez appeared at the jail and provided defendant with sufficient funds to bail himself out. Using the name of Adrian Alonzo, he executed a written appearance bond with the jail official who processed such matters. On October 22, 2002, defendant appeared in court and pled guilty to the offenses of driving without a license and failure to have liability insurance. He was fined $100 on the license violation and $250 on the insurance violation. The bond was discharged, and the cash security returned to Sanchez.

On April 1, 2003, a motor vehicle in which defendant was riding accessed a drive-in window at the motor vehicle division of the Woodbury County Treasurer's Office. A female who was driving the vehicle told the motor vehicle clerk on duty that her passenger needed the proper form to obtain a duplicate certificate of title to a motor vehicle because he had lost the original. In order to bring the correct information up on her computer, the motor vehicle clerk, assuming that defendant was the titled owner of the vehicle, asked for his name. The female in the car with defendant responded that his name was Adrian Alonzo. Defendant produced a state-issued photo identification card from Nebraska and a social security card. Both bore the name of Adrian Alonzo.

A post-it note that had been placed on the clerk's computer alerted her that, as the result of a stolen-vehicle report, authorities were to be notified if a duplicate title was requested in the name of Adrian Alonzo. The motor vehicle clerk gave a previously arranged signal to another employee in the office, who called a department of transportation fraud investigator located in a building nearby. The clerk

dealing with defendant proceeded to fill out the paperwork for the issuance of a duplicate title for Adrian Alonzo's vehicle, but stalled long enough to allow the fraud investigator to arrive on the scene. She completed the application and asked defendant to come inside the office to sign it, which he did. By this time, the fraud investigator had arrived.

The department of transportation fraud investigator interviewed defendant and obtained from him the state-issued photo ID from Nebraska and the social security card showing the name of Adrian Alonzo. A records check with the motor vehicle departments of all fifty states revealed that Nebraska had issued the identification card in his possession and that a similar identification had been issued to an Adrian Alonzo with the same social security number in the State of California. Because the fraud investigator did not believe that defendant looked like the person shown on the Nebraska photo identification card, he placed him under arrest.

Defendant was later taken to a federal immigration office where his fingerprints were checked. His prints matched those of a person who had attempted to enter the United States from Mexico in 1999 and was turned away at the border. That person gave the name of Jose Martinez Rodriguez to border officials at that time. When questioned about this matter, defendant stated that it was he who attempted to enter the United States under that name in 1999, but that his real name was Gabriel Rojas Acevedo. He confirmed that fact by producing a Mexican passport and an entrance visa from the United States consulate in Ciudad Juarez, Mexico.

Defendant was charged with forgery with respect to his signing the appearance bond with the name of Adrian Alonzo following his October 2002 arrest. He was charged with third-degree fraudulent practice and tampering with records with regard to his attempt to obtain a duplicate certificate of title under the name of Adrian Alonzo in April 2003. The jury convicted him on all three charges. He challenges the sufficiency of the evidence to sustain any of the charges. Other facts that may bear on defendant's contentions will be discussed in our consideration of the legal issues presented.

## I. *Scope of Review.*

■■■ Challenges to the sufficiency of the evidence supporting a guilty verdict in a criminal case are reviewed for correction of errors at law. *State v. Fintel,* 689 N.W.2d 95, 99 (Iowa 2004); *State v. Webb,* 648 N.W.2d 72, 75 (Iowa 2002). A verdict will be sustained if it is supported by substantial evidence. *Webb,* 648 N.W.2d at 75. Evidence is substantial if it would convince a rational fact finder that the defendant is guilty beyond a reasonable doubt. *Fintel,* 689 N.W.2d at 99; *Webb,* 648 N.W.2d at 75.

## II. *The Forgery Charge.*

■■ The statute that sets forth the elements of forgery, as charged in the trial information in this case, provides as follows:

1. A person is guilty of forgery if, with the intent to defraud or injure anyone, or with knowledge that the person is facilitating a fraud or injury to be perpetrated by anyone, the person does any of the following:

. . . .

*b.* Makes, completes, executes, authenticates, issues, or transfers a writing so that it purports to be the act of another who did not authorize that act, or so that it purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or so that it purports to be a

copy of an original when no such original existed.

Iowa Code § 715A.2(1)(*b*). In interpreting this statute, we have recognized that the elements of the crime are that the defendant:

(1) made, completed, executed, or transferred a writing purporting to be the act of another who did not authorize the act, and acted

(2) with the specific intent to defraud or injure another person or financial institution or knew his act would facilitate a fraud or financial injury.

*State v. Calhoun*, 559 N.W.2d 4, 6 (Iowa 1997); *State v. Smith*, 223 N.W.2d 223, 226 (Iowa 1974).

Defendant challenges the sufficiency of the evidence to show that the use of Adrian Alonzo's name was not authorized or that defendant acted with an intent to defraud.

A. *Whether the use of Alonzo's name was authorized.* Because of the use of the words "purports to be the act of another" contained in the statutory definition of forgery, we have held that the making of an instrument with a fictitious name may be forgery. *State v. Calhoun*, 618 N.W.2d 337, 339–40 (Iowa 2000). In such situations, it is axiomatic that a fictitious person cannot consent to the use of the fictitious identity. *Id.* If Adrian Alonzo was a fictitious name, the lack-of-authorization element would be satisfied as a matter of law, but defendant urges that Adrian Alonzo is a real person, and the State's witnesses at trial confirmed that this was also their belief.

▮ The State did not produce any direct evidence concerning who Adrian Alonzo was or that he had not authorized defendant to act in his name, but this is not fatal to its case. We have previously determined that "[f]or purposes of proving guilt beyond a reasonable doubt, direct and circumstantial evidence are equally probative." In evaluating the sufficiency of the evidence for jury consideration, we view it in the light most favorable to the verdict. *State v. Uthe*, 542 N.W.2d 810, 815 (Iowa 1996); *State v. Constable*, 505 N.W.2d 473, 478 (Iowa 1993); *State v. Sims*, 239 N.W.2d 550, 552 (Iowa 1976).

We are satisfied that the evidence produced was sufficient for the jury to find that defendant had not received authorization from the real Adrian Alonzo to execute the bail bond in his name. In determining the sufficiency of the evidence for this purpose, we may consider all of the evidence presented at trial, including that which pertained to the aborted certificate-of-title transaction. The consideration that weighs most heavily in favor of upholding the jury's finding in this regard is the fact that the action taken with regard to the bond may not be separated from the effort, successfully carried out, to have the resulting criminal conviction entered against Alonzo rather than the person who actually committed the crime. Alonzo could not have consented to the use of his name on a bail bond without simultaneously agreeing to assume the role of the person charged with the crime.

The record indicates that defendant contacted no one other than Sanchez between his arrest and release on bail. Because defendant assumed the name of Adrian Alonzo immediately on being arrested, any authorization would have had to have been prearranged with regard to future arrests suffered by defendant. This is highly unlikely. Persons do not willingly allow themselves to suffer criminal convictions resulting from undesignated acts that another person might commit in the future or to suffer the collateral consequences that can flow from such convictions such as driver's license revocations. The fact that

it would have been a criminal act to do that also weighs heavily in favor of the jury's determination that the real Adrian Alonzo did not consent to the use of his name in the bail-bond transaction. In addition to the extreme unlikelihood that anyone would give consent to the action that defendant took in Alonzo's name, the evidence surrounding the aborted certificate-of-title transaction strongly suggests defendant's assumption of a stolen identity.

■ B. *Intent to defraud.* We also reject defendant's argument that the evidence was insufficient to show that he acted with an intent to defraud. Intent may be shown by circumstantial evidence and the reasonable inferences drawn from that evidence. *State v. Walker,* 574 N.W.2d 280, 289 (Iowa 1998); *State v. Nance,* 533 N.W.2d 557, 562 (Iowa 1995). The evidence is undisputed that defendant gave false information concerning his identity when booked into the Woodbury County jail and in completing the papers for release on bond. Such conduct evinces an attempt to deceive jail officials and avoid the consequences of the criminal process. To deliberately make false statements or give false information in order to gain some advantage is to act with fraudulent intent in the criminal context. *State v. Timmer,* 260 Iowa 993, 999–1000, 151 N.W.2d 558, 561 (1967). The evidence was sufficient for the jury to convict defendant of forgery.

### III. The Fraudulent–Practices Charge.

■ In challenging his conviction for fraudulent practices, defendant urges that the evidence did not indicate that he acted "fraudulently" in completing the application for a duplicate certificate of title. Two statutes come into play with regard to defendant's fraudulent-practices convic-

tion. Iowa Code section 714.8(10) provides:

> A person who does any of the following acts is guilty of a fraudulent practice:
>
> . . . .
>
> 10. Does any act expressly declared to be a fraudulent practice by any other section of the Code.

Iowa Code section 321.97 provides:

> Any person who fraudulently uses a false or fictitious name in any application for the registration of, or certificate of title to, a vehicle ... is guilty of a fraudulent practice.

Once again, this is a situation in which intent to defraud may be inferred from the actions taken.

The jury could find from the evidence that defendant's attempt to obtain a certificate of title by giving false identification was an attempt to secure a muniment of title to a motor vehicle that he could not have obtained by using his true name. Indeed, that conclusion is inescapable from the evidence. As we stated in regard to the fraud element of the forgery charge, to deliberately make false statements or give false information in order to gain some advantage is to act with fraudulent intent. The jury had sufficient evidence to convict defendant of a fraudulent practice.

### IV. The Tampering–With–Records Charge.

■ Defendant urges that he cannot be found guilty of tampering with records in violation of Iowa Code section 715A.5 because that statute relates to private records and a certificate of title is a public record. Criminal prosecutions involving the tampering with public records, defendant asserts, may not be pursued under section 715A.5, but rather are punishable under Iowa Code section 718.5. We are

not persuaded that defendant's contention is correct.

 We have held previously that the falsification of an application for a certificate of title to a motor vehicle is not punishable, as a falsification of public documents under section 718.5, because that statute only relates to altering the completed acts of public servants. *State v. Barnholtz,* 613 N.W.2d 218, 221 (Iowa 2000). The public record involving the motor vehicle titled in Alonzo's name was not altered by defendant's actions, so he did not violate that statute. On the other hand, section 715A.5, under which defendant *was* charged, has been interpreted broadly to include not only formal business records but also other writings that have been falsified with an intent to deceive. *Walker,* 574 N.W.2d at 288–89 (creation of false proof of service on a subpoena never served); *State v. Romeo,* 542 N.W.2d 543, 547–50 (Iowa 1996) (creation of false sales receipts). In both *Walker* and *Romeo,* we viewed "falsification" as used in this statute as including forgery. *Walker,* 574 N.W.2d at 289; *Romeo,* 542 N.W.2d at 547–50.

That defendant acted with intent to deceive is almost an inescapable conclusion from the evidence. He deliberately provided the name of another person to motor vehicle authorities in order to obtain a certificate of title to a motor vehicle that he could not have obtained using his correct name. There was sufficient evidence for the jury to convict the defendant of a violation of section 715A.5. We have considered all issues presented and conclude that the judgments of the district court should be affirmed.

**AFFIRMED.**