# IN THE COURT OF APPEALS OF IOWA

No. 19-1960
Filed September 23, 2020

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**KYLE ALAN OLSON,**
      Defendant-Appellant.
_____

Appeal from the Iowa District Court for Boone County, Stephen A. Owen, District Associate Judge.

A defendant challenges his forgery conviction and sentence. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Ashley Stewart, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

A jury found Kyle Olson guilty of forgery. The district court sentenced him to an indeterminate five-year prison term. Olson now appeals, challenging the sufficiency of the evidence to support his conviction and the sentencing decision. He claims the State failed to establish he had the specific intent to defraud or injure anyone. Olson also contends the district court abused its discretion in sentencing "by considering uncharged, unproven offenses" disclosed in the victim impact statements. He requests resentencing. After viewing the evidence in the light most favorable to the State, we affirm Olson's conviction. As for his sentencing claim, because the record lacks clear evidence that the court considered improper factors in reaching its determination, we affirm his prison term.

## I. Facts and Prior Proceedings

In 2014, Olson moved from California back to Boone, Iowa, to live with his mother, who was sick. He stayed with her in the family home until she passed away in October 2015. His mother's will gave Olson the right to continue living in the home. Under the will, Olson was responsible for "all expenses of maintaining, including insurance, taxes, and maintenance" while he lived there. Although his mother granted Olson the life estate, the will devised ownership of the property equally to him and his three sisters, Maureen Stoneburner, Andrea Olson-Taylor, and Janelle Hilsabeck, as tenants in common. Olson's mother and father had built the home in 1952, so all four children grew up there.

In December 2017, Olson was living in the family home when the garage caught on fire. He did not tell his sisters about the damage. They learned about the fire when the insurance company contacted the eldest sister, Stoneburner,

asking her to submit contractor bids for repairing the damage because the company hadn't received any bids from Olson. Once Stoneburner found a contractor, and the insurance company approved the bid, the company issued two checks made out to the four siblings. Stoneburner used the insurance payments to compensate the contractor for the completed work. Olson got upset when he found out she had hired a contractor to fix the property. Stoneburner and Hilsabeck both testified that Olson had wanted to do the repairs himself so the siblings could have kept some of the money.

In December 2018, a second event caused damage to the family home. A water leak flooded the entire main floor. Olson did not tell his sisters about this incident either. In March 2019, the insurance company again contacted Stoneburner, asking for her authorization to make an estimate for the flood damage to settle the outstanding claim. The company told Stoneburner that it had tried contacting Olson numerous times but was unable to reach him. After Stoneburner authorized the estimate, the insurance company would issue two checks for the flood damage—a partial check for just under $18,000 to start repairs and a second check for $10,000 once repairs were completed.

In mid-April 2019, Olson deposited the first insurance check in the amount of $17,683.17 at a VisionBank ATM. The deposit routed the check into Olson's account at the Greater Iowa Credit Union. Stoneburner testified that she didn't know the insurance company had sent the first check until she called to ask. When the company provided her with a copy of the check, she discovered it had been cashed with all four of the siblings' signatures listed on the back. The three

sisters—Stoneburner, Olson-Taylor, and Hilsabeck—all testified they did not sign the check. The last name of the youngest sister, Hilsabeck, was misspelled.

A few days after Stoneburner's discovery, the three sisters filed a police report. Ethan Bailey, an investigator with the Boone Police Department, compared the sisters' signatures on the check with the signatures on their driver's licenses and found that "they did not match at all." When questioned, Olson admitted depositing an insurance check at an ATM but did not comment on the signatures. The sisters testified that sometime between the end of April and early May, they went to see the home and noticed extensive damage. The floors on the entire main floor had been removed, the drywall had been "heavily damaged" from the water, new holes appeared in the walls and ceiling, and an entire bedroom wall was gone. They saw no construction materials or tools in the home, which led them to believe that no repairs were being made.

On May 9, the district court issued a warrant for Olson's arrest. Later that month, the State charged him with forgery, in violation of Iowa Code sections 715A.2(1), 715A.2(2)(a), and 902.8 (2019). The matter went to trial on August 20; the jury found him guilty as charged. The court sentenced him to a prison term not to exceed five years. Olson appeals both his conviction and sentence.

## II. Analysis

### A. Intent to Defraud or Injure

On appeal, Olson argues the State offered insufficient evidence to support his conviction of forgery. We review sufficiency challenges for correction of errors at law. *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). We will uphold a guilty

verdict if it is supported by substantial evidence. *Id.* Substantial evidence exists if it would convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *Id.* We view all relevant evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence. *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017). Evidence is not substantial if it raises only suspicion, speculation, or conjecture. *Id.* We consider all evidence in the record, not just the evidence supporting guilt. *Tipton*, 879 N.W.2d at 692 (citing *State v. Torres*, 495 N.W.2d 678, 681 (Iowa 1993)).

The district court instructed the jury to find Olson guilty of forgery if the State proved beyond a reasonable doubt these elements:

1. On or about April 16, 2019, in Boone County, Iowa, the defendant did one or more of the following acts:
   a. Completed a check so that it purported to be the act of another who did not authorize that act; and/or
   b. Uttered a check that the defendant knew had been completed so that it purported to be the act of another who did not authorize that act; and/or
   c. Possessed a check that the defendant knew had been completed so that it purported to be the act of another who did not authorize that act.
2. The defendant specifically intended to defraud or injure Andrea Olson-Taylor, Maureen Stoneburner, and/or Janelle Hilsabeck.

The jury instructions explained that "specific intent" means not only being aware of doing an act and doing it voluntarily, but in addition, doing it with a specific purpose in mind. The court further instructed the jurors that they "may, but are not required to, conclude a person intends the natural results of his acts."

Olson does not dispute the State's satisfaction of the first element. He focuses on the second element, contending the evidence failed to show he acted with the specific intent to defraud or injure. Because specific intent is seldom

capable of direct proof, it "may be shown by circumstantial evidence and the reasonable inferences drawn from that evidence." *State v. Acevedo*, 705 N.W.2d 1, 5 (Iowa 2005). The State was not required to show actual injury or harm resulted from the act of forgery. *See State v. Calhoun*, 559 N.W.2d 4, 6 (Iowa 1997). It is the attempt to defraud or the intention to do so that is crucial. *See State v. Bolds*, 55 N.W.2d 534, 536 (Iowa 1952).

Olson argues that the State did not prove he had the intent to defraud or injure his sisters when he deposited the insurance check. He contends the State's evidence was insufficient because the same evidence "could also support the conclusion that Olson was, in fact, beginning to repair the home from the water damage." He cites *State v. Truesdell*, claiming "[e]vidence that allows two or more inferences to be drawn, without more, is insufficient to support guilt." 679 N.W.2d 611, 618–19 (Iowa 2004). According to his argument, "the removal of the carpet, drywall, walls, and hardwood floors likely could have indicated that Olson intended to use the funds from the insurance company to repair the damaged property." He asserts, without evidence he misused the funds, the jury could not find he had the specific intent to defraud because he was entitled to the insurance proceeds as "the sole person responsible for the upkeep of the home." Alternatively, Olson argues that because the evidence showed repairs were in progress, he could not have possessed the specific intent to injure the sisters, as there would be no injury.

We begin by examining what it means for a person to have the intent to defraud or injure another. During deliberations, the jury asked the court to define the word "defraud." The court provided this definition: "Defraud means to obtain something by deception." Although it is unclear what that "something" is, our

supreme court has cited cases from other jurisdictions that provide guidance. *See State v. Hoyman*, 863 N.W.2d 1, 9–10 n.4 (Iowa 2015) (collecting cases). For example, the Fifth Circuit has stated that "[a] defendant acts with the intent to defraud when he acts knowingly with the specific intent to deceive for the purpose of causing pecuniary loss to another or bringing about some financial gain to himself." *United States v. Umawa Oke Imo*, 739 F.3d 226, 236 (5th Cir. 2014). Consistent with that definition, the Louisiana Supreme Court highlighted that the word "defraud" "has commercial or business connotations, which would by its nature imply a situation involving a pecuniary matter." *State v. Raymo*, 419 So. 2d 858, 859 n.1 (La. 1982).

Because an intent to defraud invokes pecuniary matters, an intent to injure likely encompasses something other than financial loss. *See id.* (citing Model Penal Code § 224.1 cmt. 5(a) (Am. Law. Inst.)). As the New Jersey Superior Court explained in *State v. Felsen*, "to injure" could "mean to misrepresent, or injuriously affect the sentiments, opinions, conduct, character, prospects, interests, or rights of another." 890 A.2d 1029, 1035 (N.J. Super. Ct. App. Div. 2006).

Here, the State made arguments under both possible interpretations. First, the State contends Olson had the intent to defraud because he aimed for a personal financial benefit by depositing the insurance check without telling the sisters. Second, the State contends Olson also intended to injure the sisters by leaving their family home in shambles even after depositing the check. As stated in the State's closing argument: "And it's not so much the money for the sisters as it is the sentimental value knowing that their home that their mother took care of, that their parents built, is now destroyed."

Olson claims the sisters' testimony about the removed floors and damaged walls was not enough to show his intent. But the jury had more proof to consider. The water leak was not the first time Olson failed to promptly make repairs or inform the sisters of the home's damaged condition. When a garage fire damaged the home in 2017, none of the sisters found out about it until the insurance company contacted Stoneburner requesting contractor bids. Olson wasn't happy when his sisters insisted on hiring a contractor. He had wanted to make the repairs himself and keep some of the insurance money as profit. A year later, he again did not tell the sisters when the house flooded. Nor did he tell them when he received the first insurance check. Even after Olson deposited the check, the sisters saw no evidence Olson had acted to repair the home. Instead, their testimony reflects that they didn't recognize the home as the one they grew up in. In their words: "The home was ruined."

Based on this pattern, the jury could infer that Olson intended to pocket the insurance money instead of spending it to fix the house. Although Olson claims the evidence could show he was in the process of making repairs, another fair inference is available from the totality of the evidence. Olson's reliance on *Truesdell* is misplaced; in that case, our supreme court held that evidence subject to two reasonable inferences was insufficient to support guilt when "an element of the crime was predicated on *a single piece of evidence*." *State v. Redd*, No. 12-1433, 2013 WL 4504878, at *3 (Iowa Ct. App. Aug. 21, 2013) (emphasis added) (clarifying *Truesdell*'s holding is inapplicable when the State provides several pieces of evidence from which a jury could infer an element of a crime).

Here, the record contains detailed testimony concerning a prior incident unrelated to the most recent damage, from which a jury could infer Olson's motive. It was reasonable for the jury to conclude that he deposited the check without telling his sisters because he didn't want them to use the money to hire a contractor as they had before. The jury could find that he intended, as the natural result of his deceptive act of depositing the money without telling the sisters, to deprive them of access to the insurance funds or to otherwise impair the sentimental value of their childhood home. Substantial evidence supports the jury's verdict.

## B. Consideration of Unproven Offenses

In his second claim, Olson asserts that the sentence imposed by the district court should be vacated and the case remanded for resentencing. He contends the court abused its discretion by considering improper sentencing factors.

Sentencing decisions are "cloaked with a strong presumption in their favor." *State v. Phillips*, 561 N.W.2d 355, 357 (Iowa 1997). We review them for an abuse of discretion. *State v. Guise*, 921 N.W.2d 26, 30 (Iowa 2018). "A district court abuses its discretion when it exercises its discretion on grounds clearly untenable or to an extent clearly unreasonable." *State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016). We consider a sentencing decision "untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* (quoting *State v. Putman*, 848 N.W.2d 1, 8 (2014)).

Olson argues the district court improperly considered unproven offenses disclosed in the oral victim impact statements in determining the sentence. Specifically, he points to three allegations discussed in his sisters' statements: (1) his history of drug abuse; (2) his involvement in prostitution; and (3) his prior

thefts. Olson claims it is "evident" from the sentencing proceeding that the court relied on these improper factors when imposing the prison term.

A remand for resentencing is appropriate if the record contains "clear evidence" that the sentencing court relied on unproven or unprosecuted offenses. *State v. Sailer*, 587 N.W.2d 756, 762–64 (Iowa 1998). Even if a victim impact statement discloses unproven offenses, "there must be an affirmative showing the court relied on . . . improper evidence." *Id.* at 762 (quoting *State v. Dake*, 545 N.W.2d 895, 897 (Iowa Ct. App. 1996)). We look at the court's reasons for imposing the sentence to determine whether any of them pertain to the impermissible statements. *See id.* at 763 (citing *Phillips*, 561 N.W.2d at 359).

Olson asserts that the following statement showed the court considered the three unproven offenses when determining the sentence:

> Presentence investigation I think outlines a history of trauma that again I think has been demonstrated in court today. I don't believe that Mr. Olson intended to live the life he lived, but it is I think reflected accurately in the statements made today and the presentence investigation. I am sure as he points out he would rather have a different relationship with his family and different outcome to all of this, but it is what it is today. And what it is is a history of criminality, a history of hurting himself, his family, his community, and it has to stop, as his victims point out today.

Contrary to Olson's assertion, this statement does not show a reliance on improper factors sufficient to overcome the strong presumption in favor of the sentencing decision. The court considered Olson's allocution, the victim impact statements, and the presentence investigation (PSI) report. All of which are proper factors for the court's consideration. *See* Iowa Code §§ 901.2, .5. True, the victim impact statements refer to Olson's "history of drug abuse" and prior incarceration for theft. But the PSI report outlines these offenses under his criminal background history,

so the court could properly consider that information. More concerning is the allegation of Olson's prostitution, which the PSI does not mention. But the court's statement does not show any reliance on this particular offense when setting the sentence.

As our supreme court reasoned in *Sailer*:

> [I]t is essential to the purpose of the victim impact statement that the victim be given an opportunity to fully convey the impact a crime has had. Although this may at times result in the airing of allegations which are unproven, we trust that our district courts, when weighing such statements as part of the sentencing determination, will filter out improper or irrelevant evidence.

587 N.W.2d at 764.

The sentencing court did that filtering here. Immediately before listing its reasons, the court stated: "This Court, of course, is bound by the law. It is limited frankly by the law." Based on this statement and the court's emphasis on the PSI report, we are convinced "the district court knew its sentencing discretion was limited to charges actually proven or admitted." *Id.* Having found no affirmative showing that the court relied on the prostitution charge, we affirm the sentence.

**AFFIRMED.**