STATE of Iowa, Appellee,

v.

James SAILER, Appellant.

No. 97–2008.

Supreme Court of Iowa.

Nov. 25, 1998.

John J. Wolfe, Clinton, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, Lawrence H. Schultz, County Attorney, and Bruce Ingham, Assistant County Attorney, for appellee.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, SNELL, and CADY, JJ.

SNELL, J.

Defendant James Sailer pled guilty to a charge of third-degree theft, an aggravated misdemeanor. *See* Iowa Code §§ 714.1, 714.2(3) (1995). He was sentenced to the maximum term of incarceration allowed, an indeterminate prison term of two years. *See id.* § 903.1(2). Sailer appeals claiming that the district court erred in overruling his objection to certain portions of a victim impact statement introduced at the sentencing hearing and contends that the court improperly considered unproven offenses disclosed in the victim impact statement in determining his sentence. He requests that the sentence be vacated and the case remanded for resentencing. We affirm.

## I. Factual Background and Procedural History

Defendant James Sailer was charged with one count of first-degree theft following the investigation of allegations that he had stolen thousands of dollars of money and property from his employer, Clinton Electrical and Mechanical Contractors, Inc., over a seven-month period. Pursuant to a plea agreement, Sailer pled guilty to one count of third-degree theft. Under the terms of the plea agreement, Sailer was to make restitution to the victim of his crime "in an amount to be determined by separate hearing, said amount to be without regard for the jurisdictional amount of the included offense." The court accepted the plea agreement, ordered a presentence investigation and scheduled a sentencing hearing.

The presentence investigation report disclosed that Sailer had been convicted three years earlier of a theft charge in Illinois, for which he received the equivalent of a deferred judgment. The report recommended a one-year jail sentence, with all but thirty days suspended, followed by three years of supervised probation.

Prior to the sentencing hearing, Sailer filed a motion to exclude impact statements, contending that three letters submitted by various people should not be considered because they "contain broad and sweeping accusations against the defendant [and][t]he issues addressed in the letters go far beyond the offense to which defendant is pleading guilty." The court scheduled the motion to be heard at the sentencing hearing. At the start of the sentencing hearing, the court granted Sailer's motion in part by refusing to consider letters submitted by two members of a corporate officer's family and a former employee because they were not "victims" of the crime. The court denied the motion with regard to a proposed oral victim impact statement from Carl Aldredge, the vice president of Clinton Electrical and Mechanical Contractors. Following statements from the county attorney and Sailer's counsel regarding the appropriate punishment and a statement from Sailer, the court heard Aldredge's oral victim impact statement.

Near the start of Aldredge's statement, Sailer's counsel lodged an objection after the following exchange between Aldredge and the county attorney:

Q: Can you describe for the Court any change in the welfare of Clinton Electrical and Mechanical Contractors, Inc., as a result of Jim Sailer's theft from it? A. Mr. Sailer not only stole money, equipment, he forged documents—

MR. WOLFE [defense counsel]: Your Honor, at this point—

THE COURT: The objection is sustained. No statements regarding any other uncharged offenses will be heard by the Court. I believe you're going to have to

ask this person questions because of the constitutional safeguards that are required still in this matter. . . .

. . . .

MR. WOLFE: Your Honor, the other objection, so I don't interrupt the witness unduly, our objection is to testimony about incidents to which there has not been a plea. I know there's some problems with this, but it was theft in the third degree and what I hear is allegations about responsibility for much more than that. I guess I would object to anything that goes beyond the scope of what my client has plead to.

THE COURT: That objection is overruled. The scope is to theft because of the way the plea agreement is structured, counsel. The matter goes to theft. . . .

The statement continued in a question-and-answer format, with the county attorney eliciting statements from Aldredge regarding how Sailer committed the thefts and the impact of those thefts on the company. As part of his statement, Aldredge described several incidents outlined in the minutes of testimony, as well as incidents not contained in that document. Aldredge also explained that Clinton Electrical and Mechanical Contractors, Inc. was no longer in operation, a fact which he attributed to the repercussions from Sailer's actions. Defense counsel interjected at one point during the statement, seeking assurance from the court that a standing objection existed with regard to some of the content of Aldredge's statement. In his appeal, Sailer objects specifically to statements by Aldredge regarding Sailer's alleged theft of proceeds from the sale of scrap iron and the alleged theft of $40,000 worth of tools and equipment.

Sailer alleges that Aldredge's victim impact statement was improper because some of the allegations met the level of the original charge of first-degree theft, which is theft of property in excess of $10,000 in value. *See* Iowa Code § 714.2(1). Sailer contends the statement should not have been admitted because the information it contained went beyond the scope of the offense to which he pled guilty, third-degree theft, and did not comply with Iowa Code section 910A.5, providing for the use of victim impact statements.

Following Aldredge's statement, the court proceeded directly to sentencing. The court discussed information contained in the pre-sentence investigation report regarding a past criminal incident, possible mental health problems, and Sailer's family obligations. The court then sentenced Sailer to a two-year indeterminate prison sentence, the maximum allowed for third-degree theft, an aggravated misdemeanor. *See id.* § 903.1(2). The court also ordered Sailer to pay victim restitution in an amount to be determined at a future hearing, pursuant to the plea agreement. The court stated as follows with regard to the reasons for the sentence imposed:

> The Court has considered in this sentence all of the matters contained in the pre-sentence investigation report. *The Court has considered the amount of the financial loss to the victim of this offense.* The Court has specifically considered that the defendant received a special conditional discharge of twelve months in 1994 on a charge of theft.

(Emphasis added.)

Sailer contends that the court's statement shows it was improperly swayed by the victim impact statement, which contained allegations of an amount of financial loss greater than the $1000 limit for third-degree theft. Thus, he maintains that in determining the sentence to be imposed, the court considered facts constituting the offense with which he was originally charged, first-degree theft, rather than the offense to which he pled guilty, third-degree theft. Therefore, Sailer argues, his sentence was based on an unproven offense, an outcome which violates the Due Process Clauses of the Federal and Iowa Constitutions. *See* U.S. Const. amend XIV; Iowa Const. art. I, § 9.

## II. Standard of Review

We review the district court's sentence for the correction of errors at law. Iowa R.App.P. 4; *State v. Phillips,* 561 N.W.2d 355, 357 (Iowa 1997). "A sentence will not be upset on appellate review unless

the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure, such as trial court consideration of impermissible factors." *State v. Loyd,* 530 N.W.2d 708, 713 (Iowa 1995) (citing *State v. Wright,* 340 N.W.2d 590, 592 (Iowa 1983)). With regard to the district court's discretion in this area, we stated in *Loyd:*

Sentencing decisions of the trial court are cloaked with a strong presumption in their favor, and an abuse of discretion will not be found unless the defendant shows that such discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.

*Id.*

### III. Validity of Sentence Imposed

Sailer asserts that the sentence imposed by the district court should be vacated and the case remanded for resentencing. First, Sailer contends the victim impact statement furnished by Aldredge did not comply with Iowa Code section 910A.5 and therefore should not have been heard in its entirety by the court. Second, Sailer argues the court improperly considered unproven offenses detailed in Aldredge's victim impact statement in determining the sentence to be imposed.

### A. Compliance with Iowa Code Section 910A.5—Aldredge's Victim Impact Statement

■ Iowa Code section 910A.5 (1997) provides in pertinent part:

1. A victim may present a victim impact statement to the court using one or more of the following methods:

. . . .

b. A victim may orally present a victim impact statement at the sentencing hearing in the presence of the defendant.

. . . .

2. A victim impact statement shall include the identification of the victim of the offense, and may include the following:

a. Itemization of any economic loss suffered by the victim as a result of the offense. . . .

. . . .

e. Any other information related to the impact of the offense upon the victim.

The stated purpose of chapter 910A is as follows:

It is the purpose of this Act to assure the fair and compassionate treatment of victims and witnesses of crimes and to increase the effectiveness of the criminal justice system by affording to them certain basic rights and consideration, and by reaffirming the criminal justice system's fundamental responsibility to victims and witnesses to ensure their equitable and fair treatment, protect them from intimidation and further injury, assist them in overcoming emotional and economic hardships resulting from criminal acts, and to keep them informed of the status of their case.

1986 Iowa Acts ch. 1178, § 1.

Sailer contends that the statute limits the scope of the victim impact statement to a discussion of only the offense of which the defendant has been found guilty or to which he pled guilty. He argues this limitation is implicit in the language of the statute, which allows the victim to provide a statement regarding the impact of "the offense." According to Sailer, this means Aldredge's statement should have been limited to "the offense" to which he pled guilty, third-degree theft. Arguably, however, the word "offense" as used in section 910A.5 could also mean the offense with which the defendant was originally charged or the offense the victim has reason to believe the defendant committed.

■ The legislature did not define the word "offense" in chapter 910A. Therefore, we refer to the rules of statutory interpretation to determine the appropriate meaning. Our goal in interpreting a statute is to give effect to the intent of the legislature. *Lockhart v. Cedar Rapids Community Sch. Dist.,* 577 N.W.2d 845, 847 (Iowa 1998). That intent is shown by the words used in the statute. *Id.* The rules of statutory interpretation can be summarized as follows:

"Absent legislative definition or a particular and appropriate meaning in law, we give words their plain and ordinary meaning." *State v. Ahitow,* 544 N.W.2d 270,

272 (Iowa 1996); *see also* Iowa Code § 4.1(38). We also consider the context in which the words are used. Iowa Code § 4.1(38). We apply rules of statutory construction only when the terms of a statute are ambiguous. *Carolan v. Hill,* 553 N.W.2d 882, 887 (Iowa 1996). A statute is ambiguous if reasonable persons could disagree as to its meaning. *Id.; American Asbestos Training Ctr., Ltd. v. Eastern Iowa Community College,* 463 N.W.2d 56, 58 (Iowa 1990). "Ambiguity may arise in two ways: (1) from the meaning of particular words; or (2) from the general scope and meaning of a statute when all its provisions are examined." *Carolan,* 553 N.W.2d at 887 (quoting *Holiday Inns Franchising, Inc. v. Branstad,* 537 N.W.2d 724, 728 (Iowa 1995)).

*William C. Mitchell, Ltd. v. Brown,* 576 N.W.2d 342, 347 (Iowa 1998).

We have already noted that the legislature did not provide a definition for the word "offense." *Black's Law Dictionary* defines "offense" as "[a] felony or misdemeanor; a breach of the criminal laws; violation of law for which penalty is prescribed." *Black's Law Dictionary* 1081 (6th ed.1990). *Webster's* definition of the law-related meaning of "offense" is similar: "an infraction of law: CRIME, MISDEMEANOR." *Webster's Third New Int'l Dictionary* 1566 (1993). Neither of these definitions, however, provide a contextual meaning, which is necessary to a proper interpretation of the statute.

As the word "offense" is used in section 910A.5, it is not clear whether the legislature intended its use to be limited to a narrow definition—the offense or offenses to which the defendant pled guilty or of which the defendant was found guilty—or a broader definition which would allow a greater range of testimony by the victim. Because reasonable persons may disagree as to which meaning of "offense" is more appropriate, we turn to rules of statutory interpretation to aid us in divining the proper meaning. *Mitchell,* 576 N.W.2d at 348. Iowa Code section 4.6 lists several factors a court should consider, among others, in determining the intention of the legislature when the terms of a statute are ambiguous:

1. The object sought to be attained.

2. The circumstances under which the statute was enacted.

3. The legislative history.

4. The common law or former statutory provisions, including laws upon the same or similar subjects.

5. The consequences of a particular construction.

6. The administrative construction of the statute.

7. The preamble or statement of policy.

Iowa Code § 4.6 (1995). We have said the following in summarizing our duty when interpreting statutes:

The ultimate goal of statutory construction is to give effect to the intent of the legislature. We cannot, under the guise of construction, enlarge or otherwise change the terms of the statute as the legislature adopted it. We will not construe a statute in a way that would produce impractical or absurd results, and we should not speculate as to the probable legislative intent apart from the wording used in the statute.

*Carolan v. Hill,* 553 N.W.2d 882, 887 (Iowa 1996) (citations omitted).

Mindful of these rules of statutory interpretation, we now turn to the matter of interpreting the meaning of the word "offense" as it appears in Iowa Code section 910A.5. Several of the factors listed in section 4.6 as appropriate for consideration are either not applicable or not available. The legislative history which does exist regarding the enactment of section 910A.5 does not discuss the intended meaning of the word "offense." There is no common law in this area, as victim impact statements are a creature of statute. Similarly, there are no prior laws on which to base an interpretation and no laws on similar subjects. Also, there is no administrative construction of section 910A.5. The remaining factors all address, to some extent, the purpose of the statute.

The legislative purpose of chapter 910A is set forth above. Among the objectives listed are "the fair and compassionate treatment of victims ... of crimes," "reaffirming the criminal justice system's fundamental responsibil-

ity to victims ... to ensure their equitable and fair treatment," and "assist[ing] [victims] in overcoming emotional and economic hardships resulting from criminal acts." *See* 1986 Iowa Acts ch. 1178, § 1. Consistent with these stated objectives, it seems a broader interpretation of the word "offense" would be most appropriate. Allowing a victim to testify fully and completely, without regard for whether particular elements of offenses were proved or admitted would serve the objective of "fair and compassionate treatment" of victims and would also likely aid victims "in overcoming emotional and economic hardships resulting from criminal acts." *See id.*

There are also certain consequences which may arise from either a broad or narrow interpretation of the word "offense." Limiting the victim to statements only about offenses admitted or proved would likely frustrate the victim because it would deny the victim the opportunity to state the full impact of the crime. Given the large number of plea agreements utilized in the criminal justice system, many victims would be limited in this manner. The reasons for plea agreements are varied and not all such agreements indicate a weakness in the State's case. Moreover, such a narrow reading of the word "offense" would involve multiple objections by defense counsel during the statement and undue involvement by the court regarding the content of the victim's statement.

Conversely, a broad reading of the word "offense" would not unduly harm the defendant's rights, while more adequately fulfilling the victim's rights. As we discuss more fully below, a sentencing court may not consider unproven offenses in determining the appropriate sentence for a defendant. We trust the sentencing court with the discretion and responsibility to avoid consideration of any unproven offenses which may arise in the content of the victim impact statement. If a sentencing court should happen to improperly consider such offenses when setting a defendant's sentence, appellate review is available to correct the error. Sailer argues that allowing a victim impact statement to include allegations of unproven offenses denies defendants certain constitutional rights, such as the presumption of innocence and the right

of confrontation. Sailer neglects to recognize the distinction between the sentencing phase of a criminal proceeding, in which the court is trying to determine an appropriate sentence for an offense for which guilt has already been established, and the guilt phase of a criminal proceeding, during which the above-mentioned constitutional rights of the defendant must be protected vigilantly.

 In interpreting statutes, "[w]e must not forget ... that our primary goal is to give statutes a reasonable construction which will effectuate rather than defeat the purpose of the statute." *Mitchell,* 576 N.W.2d at 349 (citing *Metier v. Cooper Transp. Co.,* 378 N.W.2d 907, 912 (Iowa 1985)). We find that a reasonable interpretation of the word "offense" as it appears in section 910A .5 should not be limited to the offense or offenses for which guilt has been established. To interpret section 910A.5 in the manner defendant urges would further victimize the victim, by forcing his or her impact statement to conform to a rigid legal standard instead of allowing an unabridged expression of the impact of the offense. Rather, the word "offense" should be more broadly construed to enable the victim to fully detail the impact of the offense, regardless of whether certain elements of a crime have been established. This construction of Iowa Code section 910A.5 furthers the intent of the legislature to ensure the fair and equitable treatment of victims and to aid victims in overcoming the emotional and economic harm caused by the crime.

In the case at bar, all of the incidents to which Aldredge testified were part of the same course of conduct from which the theft charge arose. Therefore, the impact of those acts was properly addressed by the victim and the sentencing court did not err in allowing the statement to be admitted in its entirety.

B. Consideration of Unproven Offenses

1. Preservation of Error

The State contends Sailer failed to preserve error because he failed in his brief to state "how the issue was preserved for review, with references to the places in the

record where the issue was raised and decided." Iowa R.App.P. 14(a)(5). We find Sailer's error preservation record is minimally sufficient and elect to proceed to the merits.

### 2. The Merits

■ As noted above, a sentence imposed by the district court will not be overturned unless we find an abuse of discretion or a defect in the sentencing procedure, such as the consideration by the district court of impermissible factors, which Sailer alleges here. *Loyd*, 530 N.W.2d at 713. Specifically, Sailer contends the district court improperly considered unproven offenses detailed in Aldredge's victim impact statement in determining the sentence to be imposed. Sailer argues that the record of the sentencing proceeding clearly demonstrates the court considered unproven offenses in determining the appropriate punishment. Sailer points to the statement made by the court in support of its sentence that "[t]he court has considered the amount of the financial loss to the victim of this offense."

■ We have noted previously that "[w]e will set aside a sentence and remand a case to the district court for resentencing if the sentencing court relied upon charges of an unprosecuted offense that was neither admitted to by the defendant nor otherwise proved." *State v. Black*, 324 N.W.2d 313, 315 (Iowa 1982); *accord State v. Sinclair*, 582 N.W.2d 762, 765 (Iowa 1998). This rule prohibits a sentencing court from imposing "a severe sentence for a lower crime on the ground that the accused actually committed a higher crime ... even if the prosecutor originally charged the higher crime and reduced the charge." *State v. Thompson*, 275 N.W.2d 370, 372 (Iowa 1979). This rule similarly prohibits a sentencing court from relying on "additional, unproven, and unprosecuted charges" when no facts before the court show the charges are valid and the defendant does not admit the additional charges. *State v. Messer*, 306 N.W.2d 731, 732–33 (Iowa 1981).

■ We first must ascertain whether the district court did indeed rely on unprosecuted or unproven offenses in determining Sailer's sentence. As our court of appeals has previously noted, "[i]n order to overcome the

presumption the district court properly exercised its discretion, there must be an affirmative showing the court relied on ... improper evidence." *State v. Dake*, 545 N.W.2d 895, 897 (Iowa App.1996) (citing *State v. Ashley*, 462 N.W.2d 279, 282 (Iowa 1990)). We have considered this issue several times before and find that the circumstances in which we have concluded the sentencing court did rely improperly on unproven or unprosecuted offenses are not comparable to the circumstances in the case at bar.

For example, in *State v. Sinclair*, we vacated the defendant's sentence and remanded for resentencing because the court clearly considered three earlier charges of operating while intoxicated that had been dismissed when sentencing the defendant. The court stated as follows when giving its reasons for the sentence imposed:

> ... I have to under the law sentence you as a first offense because that's what it was, and [ ] you weren't convicted on the other three. But I believe that I can take into consideration that there was a problem because you were arrested for some type of alcohol-related incident and that for some reason maybe they couldn't prove you guilty beyond a reasonable doubt and that's why those were dismissed, and the Court has to take that into consideration. That this is a first, but you've had three prior arrests.

*Sinclair*, 582 N.W.2d at 765. We found this statement by the district court clearly indicated it took prior unprosecuted offenses into consideration when setting the defendant's sentence. *Id.*

In *State v. Gonzalez*, 582 N.W.2d 515, 516 (Iowa 1998), we found the following statement clearly showed the sentencing court considered charges that had been dismissed: "[T]he concession provided in the plea agreement provides for actually the dismissal of, what would probably be easily provable, five additional counts, so there is a substantial concession that's already been made to the defendant." Accordingly, we vacated the defendant's sentence and remanded for resentencing. A statement made by the sentencing court in *State v. Black* also led our court

to the conclusion that the court considered unproven offenses when determining the defendant's sentence:

> The fact that you pled guilty to the charge of Indecent Exposure cannot and does not belie the fact that the State in return for the plea dismissed a Burglary charge. . . . The Court cannot and will not ignore the factual basis which gives rise to this charge.

*Black*, 324 N.W.2d at 315. Based on this statement, we vacated the defendant's sentence and remanded the case to the district court for resentencing.

We find this case similar to *State v. Phillips*, 561 N.W.2d 355 (Iowa 1997), in which we upheld a defendant's sentence on appeal despite the fact that a victim impact statement disclosed other possible offenses. In *Phillips*, the defendant pled guilty to third-degree sexual abuse. At the sentencing hearing, the victim's father made an oral victim impact statement, during which he referred to "sexual predators" and asserted the defendant had "fed those children alcohol." *Phillips*, 561 N.W.2d at 357. The defendant contended the court impermissibly relied on those statements in determining his sentence. The trial court listed several reasons for the sentence imposed, none of which pertained to the statements made by the victim's father. We "discern[ed] no reliance on improper factors" based on the statement and affirmed the sentence imposed. *Id.* at 359.

In *State v. Sumpter*, 438 N.W.2d 6 (Iowa 1989), victim impact statements from the victim's aunts and uncles were allowed by the sentencing court. Although we concluded the aunts and uncles were not among the group of persons allowed to give such statements, we found the defendant suffered no prejudice because he did not prove the court impermissibly relied on the statements. We noted the defendant's assertion that the victim impact statements " 'could very possibly' have affected the court's judgment" was "an insufficient predicate for a finding of error." *Sumpter*, 438 N.W.2d at 9.

In the case at bar, when listing its reasons for imposing the maximum allowable sentence, the court stated:

> The Court has considered in this sentence all of the matters contained in the pre-sentence investigation report. The Court has considered the amount of the financial loss to the victim of this offense. The Court has specifically considered that the defendant received a special conditional discharge of twelve months in 1994 on a charge of theft.

From this statement, we are unable to discern any reliance on improper factors which would overcome the presumption that the district court properly exercised its discretion. Rather, the court's statement appears to merely list sentencing factors which must be considered pursuant to the Iowa Code. Section 901.5 provides that:

> After receiving and examining all pertinent information, including the presentence investigation report and victim impact statements, if any, the court shall consider the following sentencing options.

The court's statement reveals that it took into consideration the presentence investigation report, the victim impact statement, and the defendant's prior conviction, all of which are permissible factors for consideration at sentencing. *See* Iowa Code §§ 901.2, .5. The statement that the court considered "the amount of the financial loss to the victim" does not prove the court relied on unproven offenses in formulating the sentence. Without further proof the court considered Aldredge's discussion of unproven offenses in the victim impact statement for an improper purpose, we take this statement at face value to mean the court merely considered the impact on the victim when setting the sentence.

Another statement made by the district court during the sentencing proceeding gives us further confidence that the court did not improperly consider unproven offenses in determining Sailer's sentence. In ruling on Sailer's motion to exclude impact statements, the court stated as follows:

> The motion assumes that a sentencing court, a sentencing judge, cannot determine what letters and what portions of which letters are irrelevant to the sentencing decision. A victim impact statement

will be considered by the Court in those portions of it which are relevant to the sentencing decision.

We firmly believe that this statement illustrates the district court knew its sentencing discretion was limited to charges actually proven or admitted. We place great confidence in judges to follow this mandate and will not assume a judge failed to do so without clearer evidence than what Sailer presents in the case at bar.

We construe the district court's statement regarding the financial loss to the victim to be merely a reference to consideration of the victim impact statement in general as required by Iowa Code section 901.5. We do not believe, as Sailer urges, that this statement reveals the district court improperly considered unproven offenses in determining the sentence. As we noted in the previous section, it is essential to the purpose of the victim impact statement that the victim be given an opportunity to fully convey the impact a crime has had. Although this may at times result in the airing of allegations which are unproven, we trust that our district courts, when weighing such statements as part of the sentencing determination, will filter out improper or irrelevant evidence. Without any clear evidence to the contrary, we assume the district court did so in the case at bar.

IV. Conclusion

We conclude the district court did not err in its rulings regarding the victim impact statement. We also find the defendant did not prove the district court considered impermissible factors in imposing a two-year indeterminate prison term on the defendant. Similarly, we find no abuse of discretion in the district court's choice of sentence. We therefore affirm the sentence entered by the district court.

**AFFIRMED.**