# IN THE COURT OF APPEALS OF IOWA

No. 22-1016
Filed March 29, 2023

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**CORY GLENN CARTER,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Joel W. Barrows,
Judge.

A defendant challenges his prison sentence for lascivious acts with a child.
**AFFIRMED.**

John O. Moeller, Davenport, for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney
General, for appellee.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

Cory Carter appeals the prison sentence imposed following his guilty plea to lascivious acts with a child. He raises two complaints.[1] First, he contends the district court failed to give sufficient reasons for the sentence—specifically for rejecting the probation recommendation in the presentence investigation report (PSI). Second, he oppugns the court's reliance on the victim impact statements. Finding no error in the sentencing process, we affirm Carter's prison term.

**I.      Facts and Prior Proceedings**

Carter climbed into bed with a young relative in his care and groped the child's penis. After Carter returned to his own room and fell asleep, the eleven-year-old victim texted his mother before running outside and calling 9-1-1.

The State charged Carter with second-degree sexual abuse—later adding a charge of lascivious acts with a child. Carter reached a deal with the State, agreeing to plead guilty to that second count in return for the State dismissing the first count. The State was free to make any sentencing recommendation. Before sentencing, the district department of correctional services prepared a PSI, which recommended supervised probation.

At the sentencing hearing, the prosecutor proposed playing a recording of the victim's 9-1-1 call.[2] Defense counsel asked whether it was "intended for

---

[1] Carter divides his argument into five sections, but we believe they can be boiled down to this pair of challenges.

[2] The State also informed the court that the victim's mother and stepmother planned to present oral victim impact statements.

inflammatory purposes or informative purposes."[3]  The prosecutor responded that playing the call would enable the court "to evaluate the serious nature of this offense."  The court then listened to the recording.

When it came to sentencing recommendations, the State advocated for a term of imprisonment not to exceed ten years.  Why?  The State emphasized the nature of the offense, noting that Carter was "in his fifties" and had been "entrusted to watch this child."  The State asserted that Carter exploited that trust in a calculated way: "It wasn't by accident.  He intentionally waited for this child to be asleep, or so he thought.  He waited for him to be in a bed and be in that vulnerable position."  The State insisted that incarceration was necessary to protect the community from further offenses by Carter and to deter others from molesting children.

To counter, the defense asked the court to follow the PSI recommendation of a suspended sentence.  Why?  Defense counsel urged that those investigators had expertise with sexual offenders and could tell if someone was willing and able to participate in treatment.  In his allocution, Carter acknowledged doing something "very wrong" and promised it would never happen again.

After receiving those competing recommendations, the sentencing court took a recess and directed the prosecutor to review the victim impact statements. The court noted it could not consider "uncharged or unproven conduct."  The prosecutor reviewed the statements and provided copies to the defense.  The

---

[3] On appeal, Carter includes an oblique argument that introducing the 9-1-1 call may have violated the plea agreement.  Because the argument is not fully developed, we decline to address it.

mother and stepmother then read their prepared statements for the court.[4] They both described a marked change in the child's outlook since he was victimized. Once "happy-go-lucky," he transitioned into "a child of introversion, anger, and doubt."

The court then accepted the plea agreement and imposed an indeterminant ten-year prison sentence. The court explained: "The reasons for the sentence are due to the nature of the offense and protection of the community. The Court shares the concerns expressed by the State in this case."

Carter appeals his sentence.[5]

## II.    Analysis

We review Carter's sentencing claims for correction of legal error. *See Wilbourn*, 974 N.W.2d at 65. We will reverse only if we find an abuse of discretion in the sentence selection or some other defect in the sentencing process. *State v. Damme*, 944 N.W.2d 98, 103 (Iowa 2020). We review de novo a sentencing challenge that implicates due process. *State v. Harrington*, 805 N.W.2d 391, 393 (Iowa 2011).

### A.  Reasons for the Sentence

A district court must "state on the record its reason for selecting the particular sentence." Iowa R. Crim. P. 2.23(3)(d). The purpose of that rule is two-

---

[4] The parents qualify as victims entitled to present impact statements. Iowa Code § 915.10(3) (2022) (defining "victim" to include "immediate family members of a victim" who was under age eighteen at the time of the offense). Carter does not contest their eligibility to give victim impact statements.

[5] Carter meets the good-cause requirement under Iowa Code section 814.6(1)(a)(3) to proceed with a direct appeal challenging his sentence. *See State v. Wilbourn*, 974 N.W.2d 58, 66 (Iowa 2022).

fold: (1) to ensure that defendants understand the consequences of their crimes and (2) to allow appellate courts to review the sentencing court's exercise of discretion. *Wilbourn*, 974 N.W.2d at 67.

Carter contends that "[t]he court's failure to explain its decision to reject probation as recommended by the presentence investigator prevents appellate review of the sentence." We disagree. Iowa Rule of Criminal Procedure 2.23(3)(d) does not require a court to give reasons for rejecting a particular sentence. *Id.* Here the court gave reasons, granted they were "terse and succinct" reasons, for the prison sentence. *See State v. Garrow*, 480 N.W.2d 256, 260 (Iowa 1992). It did not need to say why it rejected the PSI recommendation. Such recommendations are not binding on the sentencing court. *State v. Grgurich*, 253 N.W.2d 605, 606 (Iowa 1977). After selecting its sentence, the court cited the nature of Carter's offense, as described by the State, and the need to protect the public from those kinds of offenses. The brevity of the sentencing court's remarks does not prevent us from reviewing its exercise of discretion.

### B. Victim Impact Statements

Carter next argues that the court relied on impermissible factors referenced in the victim impact statements. In particular, he highlights this sentence in the stepmother's victim impact statement:

> There is absolutely no question that the act committed is Sexual Abuse in the Third Degree, and we are asking for a maximum sentence of ten years in prison to rightfully assign these feelings of blame and guilt and to allow our family closure, healing, and further victimization by this man.

This layperson's mistaken reference to a crime—which was never included in the trial information—is not grounds for reversal. The record shows that the court did

not rely on that misstatement. In fact, the court was clear that it would not consider unproven or unprosecuted offenses. And we are mindful of the importance of allowing victims "to fully convey the impact a crime has had." *State v. Sailer*, 587 N.W.2d 756, 764 (Iowa 1998) (trusting district courts to filter out improper evidence). We reject the claim that the court entertained improper information.

Finally, Carter contends that the victim impact evidence violated his constitutional rights. Drilling down, he insists: "The presentation of the 911 call and [victim impact statements] without prior notice to or opportunity by the defendant to object or refute violates due process."

The State does not address this contention, not even to question whether error was preserved. But we may raise error preservation on our own accord. *See Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, this court will consider on appeal whether error was preserved despite the opposing party's omission in not raising this issue at trial or on appeal."). And while many sentencing issues defy the normal rules of error preservation, this one doesn't. *Cf. State v. Gordon*, 921 N.W.2d 19, 23 (Iowa 2018) (holding error preservation rules applied to due-process challenge to risk assessment tools used at sentencing). Without any objection from Carter at the sentencing hearing, the court could consider the victim impact evidence. *Cf. State v. Grandberry*, 619 N.W.2d 399, 402 (Iowa 2000) (holding court may rely on information in PSI report if defendant fails to object). Carter failed to preserve error on his due-process challenge.

But even if Carter could raise this issue for the first time on appeal, we would find no violation. "[V]ictim impact evidence serves entirely legitimate purposes."

*Payne v. Tennessee*, 501 U.S. 808, 825 (1991). In line with that precedent, crime victims in Iowa have the right to present an impact statement to the court. Iowa Code § 915.21(1). And filed victim impact statements will be included in the PSI. *Id.* § 915.21(1)(a). But alternatively, crime victims may choose to orally present a victim impact statement at the sentencing hearing in the presence of the defendant. *Id.* § 915.21(1)(b). Carter provides no authority for asserting that he had a right to notice of the content of those statements or an opportunity to refute them. "The victim impact statement is not an adversarial proceeding." *State v. Ahrenholz*, No. 21-1263, 2022 WL 17829367, at *6 (Iowa App. Dec. 21, 2022). In fact, the legislature directed us that "[a] victim shall not be placed under oath and subjected to cross-examination at the sentencing hearing." Iowa Code § 915.21(3). So, Carter fails to show a constitutional violation.

**AFFIRMED.**