# IN THE COURT OF APPEALS OF IOWA

No. 23-1808
Filed October 16, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOSEPH THOMAS GENTILE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Brendan Greiner, Judge.

A defendant challenges his sentences for unauthorized placement of a global positioning device and criminal mischief. **AFFIRMED.**

Adam C. Witosky of Gribble Boles Stewart & Witosky Law, Des Moines, for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee.

Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**TABOR, Chief Judge.**

Joseph Gentile seeks resentencing following his guilty pleas to criminal mischief and unauthorized placement of a global positioning device. He challenges his sentences on three grounds. First, he contends the district court relied on "unproven and uncharged" conduct highlighted in evidence introduced by the State and the victim at sentencing. Second, he alleges the court improperly considered legislative intent related to tracking devices in its sentencing decision. Third, he argues the court failed to give sufficient reasons for imposing consecutive sentences. Finding no abuse of discretion in the sentencing decision, we affirm.

## I. Facts and Prior Proceedings

Gentile and M.C. married and had two children together. They divorced in August 2021. Sixteen months later, M.C. began dating A.W. By early 2023, M.C. also earned the new title of chief executive officer for a central Iowa non-profit company. But there was another notable and unexpected addition to M.C.'s life— an AirTag.[1] In February, while M.C. was driving, she received an alert on her iPhone that there was an AirTag in her area. The alert alarmed M.C. because she was alone in the car and did not own an AirTag. She called the police, who located the device duct taped inside the rear wheel well of her car. The AirTag was registered to Gentile. Based on that information, the State charged Gentile with

---

[1] "The AirTag is a small, affordable location-tracking device manufactured and sold by Apple. It is marketed as a convenient way to keep track of personal items, like car keys. The AirTag reports its location to its owner's cell phone, so you can simply attach the AirTag to your car keys and then you can use your cell phone to find them. But people do not always use a product as marketed." *Hughes v. Apple, Inc.*, 22-cv-07668-VC, 2024 WL 1141751, at *1 (N.D. Cal. Mar. 15, 2024).

unauthorized placement of a global positioning device, a serious misdemeanor, in violation of Iowa Code section 708.11A (2023). A related no-contact order barred Gentile from interacting with M.C.

Two months later, M.C.'s alma mater recognized her professional success by awarding her an alumni achievement award. This celebratory occasion was marred by Gentile's return to Iowa from Arizona. As M.C. was leaving the award ceremony with A.W. and her children, they found A.W.'s car damaged by key marks and slashed tires. Security cameras had recorded Gentile causing the damage. For this new conduct, the State charged Gentile with criminal mischief in the second degree, a class "D" felony, in violation of Iowa Code section 716.4(1). He pleaded guilty to both charges.

At the sentencing hearing, Gentile asked for probation consistent with the recommendation in the presentence investigation (PSI) report. The State argued that these events represented only a fraction of Gentile's threatening behavior; thus, the prosecutor asked for consecutive sentences. After listening to the arguments from both sides, considering eleven exhibits offered by the State, and hearing Gentile's allocution as well as M.C.'s victim impact statement, the court imposed consecutive sentences for the two offenses for an indeterminate three-year prison term. Gentile appeals his sentences.[2]

---

[2] Because Gentile is challenging the sentences rather than the underlying guilty pleas, he has established good cause to appeal. *State v. Damme*, 944 N.W.2d 98, 105 (Iowa 2020).

## II.     Scope and Standard of Review

We review sentences within the statutory limits for an abuse of discretion. *State v. Headley*, 926 N.W.2d 545, 549 (Iowa 2019).  We place considerable trust in the sentencing decisions of the district court.  *State v. Formaro*, 638 N.W.2d 720, 724–25 (Iowa 2002).  "Thus, our task on appeal is not to second guess the decision made by the district court, but to determine if it was unreasonable or based on untenable grounds."  *Id.* at 725.

We presume the sentencing court properly exercised its discretion; Gentile must overcome that presumption by showing clear evidence that it did not do so. *See State v. Sailer*, 587 N.W.2d 756, 763–64 (Iowa 1998) (holding that mere mention of improper information during sentencing is insufficient to meet this standard).  Misapplication of the law is an example of untenable grounds for a sentence.  *Headley*, 926 N.W.2d at 549.  Rejection of the PSI recommendation alone is not an abuse of discretion.  *See id.* at 552.

## III.     Analysis

### A. Information considered at sentencing

We first consider Gentile's claim that the district court relied on improper information from the victim impact statement and the State's exhibits.  Victim-impact evidence is a legitimate "method of informing the sentencing authority about the specific harm caused by the crime in question."  *Payne v. Tennessee*, 501 U.S. 808, 825 (1991).  But it can be an imperfect resource.  Victims are not bound to any script, as they can speak to "any other information related to the impact of the offense [on their lives]."  Iowa Code § 915.21(2)(e).  This other information can

lead to "the airing of allegations which are unproven." *Sailer*, 587 N.W.2d at 764. Gentile contends that the district court relied on such unproven allegations.

M.C. provided both written and oral impact statements detailing Gentile's actions in the eighteen months since their divorce and showcasing a pattern of threatening behavior—beyond the charged incidents. For example, she told the court that Gentile was responsible for "dozens of spam phone calls" placed to her and A.W. She also alleged that he sent harassing emails and texts. And, according to her statement, Gentile entered her home while she and the children were not there.

As Gentile argues, these allegations do not speak directly to his convictions. But we trust the district court to "filter out improper or irrelevant evidence." *Id.* Gentile has no clear proof that the sentencing court relied on any extraneous information mentioned by M.C. In fact, the record shows just the opposite. The court said it was "not going to consider unproven and uncharged conduct." Not only did the court make this disavowal twice, but it did not mention any uncharged crimes in announcing the sentences. And nothing in the court's reasoning suggests that the unproven conduct influenced its decision. The court's repeated disavowal was enough to cure any potential taint. *See State v. Matheson*, 684 N.W.2d 243, 244−45 (Iowa 2004) ("As a minimum the court should make it clear the offending evidence was not a consideration.").

The court's capacity to screen for improper information also applies to the State's exhibits. When admitting the exhibits, the court noted, "I will give them the weight that I believe they deserve for purposes of sentencing." The court admitted the challenged evidence "for a *valid* limited purpose." *See State v. Decker*, 744

N.W.2d 346, 357 (Iowa 2008). Because Gentile fails to produce clear evidence that the court gave any improper weight to the State's exhibits, we find no error in their admission.

### B. Comments on legislative intent

Second, we turn to Gentile's claim that the court improperly considered legislative intent surrounding global positioning devices in its sentencing decision. Like Gentile, we find that the record is concerning on this point. In making its sentencing recommendation, the State argued that "the legislature, since the time that [Gentile's] charge was filed, has increased the penalty for this type of offense, because they know how serious it is." M.C. added: "I am grateful for that change in legislation as using an electronic monitoring device to stalk someone is a crime, so violating it should be and now is a felony."

These statements were at best irrelevant to the sentence imposed and were at worst factually misleading. Both parties agree that Iowa Code section 708.11A—under which Gentile was charged and convicted—was not the code section referenced in these statements. True, the legislature did increase the penalty for offenders who use a technological device while stalking their victims. 2023 Iowa Acts ch. 74, §§ 11–13 (codified at Iowa Code § 708.11 (2023)). But the State did not charge Gentile with stalking. So, its reference to legislative intent was misleading.

Still, Gentile falls short of showing that the prosecutor's statement about the legislature moved the needle for the court. The court did not discuss any legislative change. Instead, it said, "[t]he GPS placement is particularly bothersome because that is a crime for which I believe the legislature wanted to criminalize someone

who wanted to control someone who did not want to be controlled." The court's reasoning properly addressed the nature of the offense Gentile committed. We see no abuse of discretion.

### C. Reasons for consecutive sentences

Third, we consider whether the court failed to give sufficient reasons for imposing consecutive sentences. Sentencing judges—like high school students solving math problems—must explain how they got to the result that they did so appellate courts may review their work. *See* Iowa R. Crim. P. 2.23(2)(f); *State v. Hill*, 878 N.W.2d 269, 275 (Iowa 2016) (requiring sentencing courts to "explicitly state the reasons for imposing a consecutive sentence" but allowing them to rely on the same reasons as they did for choosing sentence of incarceration). Some cases require less explanation than others. *See State v. Garrow*, 480 N.W.2d 256, 260 (Iowa 1992) (noting "terse and succinct" statements are sufficient when their brevity does not prevent appellate review).

In discussing the tracking device, the court told Gentile: "[I]t's very clear from these circumstances that you were trying to control your ex-wife, and by doing so, then follow up with monitoring her and trying to understand where she was so that you could impose your will on her." Turning to the criminal mischief charge, the court explained:

> I see that you were doing that not only to impose your will on her but also the person to whom she was having a romantic interest, that it was at a particular time when she was trying to celebrate something that was happening to her, that was something for which she had a great deal of pride, and that you were imposing, again, your will through what I consider to be pretty violent behavior through the destruction of property.

When deciding the appropriate sentences, the court assured Gentile that it considered "what's in the [PSI] report, your character letters, your . , , mental health history, the letter from your psychiatrist, your employment, and your age."  The court also weighed the impact the crimes had on the victims, Gentile's need for rehabilitation, and the community's need for protection from future offenses.  After considering these factors, the court found that prison sentences were appropriate.  As for running the terms consecutively, the court cited "the separate and serious nature of the offenses."  The record supports the court's rationale.  Gentile committed his offenses months apart and targeted two different victims.  While succinct, the court's reasons for imposing consecutive sentences allow us to review its exercise of discretion.  In doing so, we find no cause for resentencing.

**AFFIRMED.**