**IN THE COURT OF APPEALS OF IOWA**

No. 24-1317
Filed May 7, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CEDRIC LEE TAYLOR,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Polk County, Celene Gogerty, Judge.

    A defendant appeals his sentence for sexual abuse in the third degree.

**AFFIRMED.**

    Grant A. Woodard and Reuben A. Neff of Wandro, Kanne, & Lalor, P.C., Des Moines, for appellant.

    Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.

    Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**TABOR, Chief Judge.**

Cedric Taylor raises two issues in this appeal of his indeterminate ten-year sentence for sexual abuse in the third degree. First, he contends that the prosecutor breached the plea agreement by expressing concerns about his ability to comply with probation and mentioning factors that supported a prison sentence. Second, Taylor faults the sentencing court for calling the victim a "child"—invoking an element of sexual abuse in the second degree.

On the first contention, because the plea agreement allowed the State to advocate for any sentence provided by law, the prosecutor's comments did not breach that agreement. On the second claim, the sentencing court's colloquial references to the victim as a child did not betray an intent to sentence Taylor for an uncharged offense. We thus affirm the judgment and sentence.

## I.     Facts and Prior Proceedings

Fifteen-year-old N.T. ran away from home in December 2022. Clive police found her at Taylor's apartment. Taylor, who was thirty-eight, admitted committing sex acts with the teenager. Taylor told the officers that he had been communicating with her on social media sites and knew that she was a runaway.

The State charged Taylor in a two-count trial information with sexual abuse in the third degree, a class "C" felony, in violation of Iowa Code sections 709.1 and 709.4(1)(b)(2)(d) (2022), and harboring a runaway, an aggravated misdemeanor, in violation of section 710.8.

The parties reached a plea deal, documented in this November 2023 order:

> ☒ **PLEA AGREEMENT.** Barring any new criminal activity or violation of this order, at sentencing the parties will recommend: *Parties free to argue all resolutions*. The State will recommend dismissal of *Count II*. On any new criminal charge or violation of this order, established by a preponderance of evidence, the State is not bound by this agreement.

Before the sentencing hearing, the department of correctional services prepared a presentence investigation (PSI) report, recommending a suspended sentence and term of probation with the condition that Taylor complete a sex-offender-treatment program. At the sentencing hearing, both the prosecutor and defense counsel urged the district court to follow that PSI recommendation.

But the court declined. Citing the "terrible impact" that this crime had on "a vulnerable girl," the sentencing court imposed a term of incarceration not to exceed ten years. Taylor appeals that sentence.[1]

## II. Scope and Standard of Review

We review Taylor's sentence for the correction of errors at law. *See State v. Davis*, 971 N.W.2d 546, 553 (Iowa 2022). To merit resentencing, he must show that the district court abused its discretion in imposing a prison term or there was a defect in the proceeding. *See id.* A prosecutor's breach of a plea agreement counts as a defect, *Patten*, 981 N.W.2d at 130, as does a sentencing court's consideration of an unproven offense, *State v. Schooley*, 13 N.W.3d 608, 616 (Iowa 2024). We examine these sentencing proceedings to see if they suffer from either defect alleged by Taylor.

---

[1] Because Taylor challenges his sentence rather than his guilty plea, he has good cause to appeal under Iowa Code section 814.6(1)(a)(3). *State v. Patten*, 981 N.W.2d 126, 130 (Iowa 2022).

**III.    Analysis**

**A.  Did the Prosecution Breach the Plea Agreement?**

A plea bargain works as a contract but carries constitutional significance for the accused who is giving up rights by agreeing to plead guilty. *Patten*, 981 N.W.2d at 131. That constitutional significance is why we expect prosecutors to strictly comply with the terms of the plea agreement. *Id.*

Here, according to Taylor, the State did not meet that strict compliance standard because the prosecutor discussed facts from the PSI that weighed against imposing a suspended sentence. For instance, the prosecutor noted that Taylor had a daughter the same age as the victim, suggesting that he should have had greater awareness of the harmful nature of his actions.[2] The prosecutor also expressed concern about the stability of Taylor's housing. On the other hand, the prosecutor emphasized that Taylor cooperated with the investigation and was "amenable to treatment." The prosecutor also highlighted Taylor's educational achievements and employment. In the end, the prosecutor recommended probation over incarceration.

Yet Taylor contends that the prosecutor "severely obfuscated [the State's] recommendation for a suspended sentence" by "implicitly suggest[ing] a harsher alternative." He compares his situation to *State v. Davis*, in which the prosecutor made a "perfunctory endorsement of the PSI report's recommendation for

---

[2] In his allocution, Taylor apologized to the court for his "lack of attendance" at the "last session." In response, the prosecutor opened with this comment: "I would have rather that Mr. Taylor apologize to the victim and her family." On appeal, Taylor contends that the prosecutor was stressing his lack of remorse.

suspended sentences immediately after she read the four victim-impact statements calling for prison time." 971 N.W.2d at 557.

But Taylor's case is unlike *Davis*, where the plea agreement obligated the State to follow the recommendation in the PSI report. *See id.* at 555. Here, the plea agreement left the parties "free to argue all resolutions." Granted, defense counsel said at sentencing that she "believe[d] the plea agreement was that [the prosecutor] said she [would] stand by what the PSI was recommending."[3] But that belief was not reflected in the November 2023 district court order accepting Taylor's guilty plea. And that is the only official record we have of the plea agreement.[4]

But even if the plea agreement had bound the State to echo the recommendation of the PSI report, it did so here. The prosecutor did not express "a material reservation regarding the plea agreement or recommended sentence" either explicitly or implicitly. *See State v. Boldon*, 954 N.W.2d 62, 71−72 (Iowa 2021) ("The prosecutor complied with the letter and spirit of the plea agreement."). The prosecutor offered this full-throated endorsement: "I do think that the PSI shows that he has some promise and ability to comply with corrections, and that's why I am recommending that he get a suspended sentence and probation and not a prison term." On this record, we find no breach.

## B. Did the Sentencing Court Consider an Unproven Offense?

Taylor next condemns the district court's repeated use of the word "child" to describe N.T. The court referred to the sexual abuse victim as a child at least four

---

[3] The prosecutor neither confirmed nor denied that rendition of the plea agreement.
[4] Taylor's appellate counsel did not order a transcript of the guilty-plea hearing.

times during the sentencing hearing. From these references, Taylor charges that the court considered the unproven and unprosecuted offense of sexual abuse in the second degree. *Compare* Iowa Code § 709.3(1)(b) (a person commits second-degree sexual abuse if the other person is a child), *and* § 702.5 (defining child as "any person under the age of fourteen years"), *with* Iowa Code § 709.4(1)(b)(2)(d) (a person commits third-degree sexual abuse if the other person is fourteen or fifteen and the defendant is four or more years older). Resentencing is required when the district court considers unproven or unprosecuted offenses when fashioning its sentence unless they are admitted or proven. *Schooley*, 13 N.W.3d at 616.

We start our analysis with some necessary context. In his allocution, Taylor told the court that he understood this was "a very serious matter" and that he hoped "to never be in this situation ever again." The court was unhappy with the passivity revealed by Taylor's last statement, saying, "This is a terrible thing you did, and it disturbs me greatly when I hear you make statements like, 'I hope to never be in this situation again.' The reason you're in this situation is not because something randomly happened. It's because you sexually assaulted a child. A girl." The court then caught itself and clarified: "When I said 'a child'—I guess she was fourteen at the time."[5] But the court continued to rebuke Taylor for not accepting responsibility: "You hope it doesn't happen? You're the one who controls whether it happens again or not. You sexually assaulted this girl."

---

[5] Our record shows that N.T. was fifteen at the time of the offense.

Later, in addressing the nature of the offense, the court again referred to N.T. as a child: "You committed a terrible crime that will have a lasting impact for a long, long time on a vulnerable girl. A child that's run away, obviously, is vulnerable, and you took extreme advantage of that."[6]

In rejecting a suspended sentence, the court reasoned that Taylor's reluctance to take personal accountability for the crime did not "bode well" for his rehabilitation in the community: "I'm not hearing anything to indicate that he thinks anything needs to change. It just kind of happened to him. He's not a threat. He sure was a threat to this child—this girl. When I say 'this child,' I mean this girl." Then defense counsel spoke up: "Your Honor, it was most certainly a lapse of judgment." And the court again pounced:

> No. No. This was not a lapse of judgment. This was a sexual assault on a vulnerable child. That is not a lapse of judgment. A lapse of judgment is speeding down the highway. He had . . . many opportunities to not let this happen, yet he sexually assaulted a girl, a vulnerable girl. He brought her into his home and sexually assaulted her. This is not just, "Whoops." It's not a lapse in judgment. This is beyond a lapse in judgment. This is a heinous offense.

Viewing the court's references to the victim as a "child" through the give-and-take of the entire sentencing hearing, we see no reason for resentencing. The sentencing court was not under the misimpression that N.T. fit the definition of child for purposes of second-degree sexual assault. *See* Iowa Code §§ 702.5, 709.3(1)(b). The court knew that her age and Taylor's age fit the elements of third-

---

[6] As context, Iowa Code section 710.8 defines a runaway child as "a person under *eighteen* years of age who is voluntarily absent from the person's home without the consent of the person's parent, guardian, or custodian" (emphasis added). N.T. met that legal definition.

degree sexual assault. *See* Iowa Code § 709.4(1)(b)(2)(d). "We will not draw an inference of improper sentencing considerations which are not apparent from the record." *State v. Formaro*, 638 N.W.2d 720, 725 (Iowa 2002). The sentencing court did not consider an unproven offense. Rather, it was motivated to reject the parties' request for probation because Taylor failed to show contrition—an acceptable consideration. *See State v. Knight*, 701 N.W.2d 83, 88 (Iowa 2005) ("[A] defendant's lack of remorse is highly pertinent to evaluating his need for rehabilitation and his likelihood of reoffending."). The court was also within its discretion to give weight to the crime's impact on the young victim. *See State v. Sailer*, 587 N.W.2d 756, 763 (Iowa 1998).

True, it may have been better for the district court to choose more precise language when describing the victim, especially given the definition of "child" in the criminal code as someone under the age of fourteen. *See Doe v. Cherwitz*, 518 N.W.2d 362, 364 (Iowa 1994) (citing Iowa Code § 702.5). But we agree with the State's suggestion that the court was using the word "child" in the "general sense, as you would someone that is not a fully grown adult." This court's colloquial use of the term "child" is not cause for vacating the sentence. When analyzing this kind of challenge, we give district courts considerable leeway to explain their reasons for choosing a particular sentence because of the discretionary nature of their job and the respect required by the appellate process. *See State v. McCollaugh*, 5 N.W.3d 620, 627 (Iowa 2024). Taylor has not shown that the sentencing court relied on impermissible factors or unproven conduct.

**AFFIRMED.**