# IN THE COURT OF APPEALS OF IOWA

_____

No. 24-1283
Filed January 7, 2026

_____

**Richard James Arnold,**
Applicant–Appellant,

v.

**State of Iowa,**
Defendant–Appellee.

_____

Appeal from the Iowa District Court for Pottawattamie County,
The Honorable Margaret Reyes, Judge.

_____

**AFFIRMED**

_____

Katie Frank Carl, Assistant State Public Defender
Wrongful Convictions Unit, attorney for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino,
Assistant Attorney General, attorneys for appellee.

_____

Considered without oral argument
by Tabor, C.J., and Greer and Buller, JJ.
Opinion by Tabor, C.J.

**TABOR, Chief Judge.**

Richard Arnold pleaded guilty to child endangerment resulting in serious injury for depriving his four-year-old daughter, G.A., of necessary medical care. At Arnold's sentencing, G.A.'s great-uncle delivered a victim impact statement on the child's behalf. In his application for postconviction relief (PCR), Arnold contends his trial attorney was ineffective in failing to object to that victim impact statement. He also contends the PCR court applied an incorrect prejudice standard to his ineffective-assistance-of-counsel claim. First, Arnold did not show he was prejudiced by counsel's performance. And Arnold failed to preserve error on his second claim.

## I.    Facts and Prior Proceedings

Arnold and his wife, Berlyn Coleman, were visiting Iowa with their children when a family member observed G.A.'s condition and called police. Eight months earlier, G.A. had injured her foot. By the time police officers saw her in the family's hotel room in Council Bluffs, the foot was swollen and infected; the infection had spread to her groin and back. Witnesses said she was "skin and bones" and in such pain she could no longer walk. When her great-uncle, Scott Fox, took G.A. to the children's hospital in Omaha, doctors discovered she had stage 4 cancer with tumors spread throughout her body.

The State charged both parents with child endangerment as a class "C" felony. *See* Iowa Code § 726.6(1)(d) (2022). At Arnold's plea hearing, the court noted that Coleman's charges were still pending and that based on the minutes of testimony neither parent had "more culpability over the other." So the court continued Arnold's sentencing to ensure both "co-defendants can be treated comparably."

2

Coleman struck a deal to plead guilty to child endangerment as a class "D" felony and received a suspended five-year prison term. The sentencing court noted Coleman's cooperation with law enforcement and her disclosures that Arnold was controlling, abusive, and distrustful of government and medical providers. Their three children had no birth certificates or social security numbers and had never seen a doctor. At Arnold's insistence, Coleman had no prenatal care and delivered the children at home without assistance. Coleman also explained that she wanted to take G.A. to a doctor for her foot, but Arnold wouldn't let her.

G.A. was hospitalized from the time of Arnold's arrest in August 2022 until his sentencing in March 2023. She was undergoing radiation therapy, and some of her tumors had shrunk. But she had lost all function in her legs and was incontinent. Given the gravity of her condition, the State asked the court to impose the maximum sentence. The prosecutor also introduced Fox to give a victim impact statement "on behalf of the victim and the family." Fox told the court: "These things have greatly impacted our family in several ways. That's why I'm here in court today to ask for the max sentence."

Arnold's trial counsel didn't object to Fox's statement. On behalf of his client, counsel said Arnold was "absolutely remorseful for this situation" and "did not intend for any of these injuries to come upon the child." Counsel asked the court to impose a deferred judgment.

But the court instead imposed the maximum sentence of ten years in prison. The court told Arnold: "This is your responsibility as a parent to watch out for your little girl, to make sure that she's safe and free from harm. And I find that your lack of follow-through has put you in this situation."

Arnold did not file a direct appeal but applied for PCR, raising several claims of ineffective assistance of counsel. The PCR court denied the application, and Arnold appeals.

## II.  Scope and Standard of Review

Generally, we review the denial of PCR for errors at law. *Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). But our review of ineffective-assistance-of-counsel claims is de novo. *Id.*

To prove ineffective assistance of counsel, Arnold must show that (1) counsel failed to perform an essential duty and (2) that failure resulted in prejudice. *Smith v. State*, 7 N.W.3d 723, 726 (Iowa 2024). "Both elements must be proven by a preponderance of the evidence." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). If an ineffective-assistance-of-counsel claim fails on either prong, "it can be decided on that ground alone." *Id.*

## III.  Discussion

Arnold raises two challenges on appeal.

First, he contends his counsel was ineffective in failing to object to Fox's victim impact statement because the great-uncle was not properly designated as G.A.'s representative. Arnold also argues counsel should have objected because of Fox's "personal involvement in the case, because of his family relationship with [Coleman], because he was unqualified . . . , and because he testified beyond the scope of what is permitted in a victim impact statement." Arnold further argues that Fox's "unauthorized statement injected impermissible considerations and inflammatory, unproven allegations into the sentencing proceeding, resulting in prejudice." The State challenges Arnold's error preservation.

The PCR court found Fox was authorized to speak at sentencing under Iowa Code sections 915.10 and 915.21(1)(e), which allow a "victim's attorney or a designated representative" to make an impact statement if the victim is unable because of age or incapacity. Thus, the PCR court found an objection would have been meritless. *See, e.g.*, *Krogmann v. State*, 914 N.W.2d 293, 306–07 (Iowa 2018) ("Failure to raise a meritless issue does not establish counsel's performance was deficient.").

But, as the State contends, Arnold's appellate briefing goes beyond Fox's authorization to give an impact statement and raises issues not decided by the PCR court; so those claims are unpreserved. *See State v. Schooley*, 13 N.W.3d 608, 617 (Iowa 2024) (finding error is preserved if (1) a party raises the issue, (2) the district court rules on it, and (3) the party reprises it on appeal).

And we need not decide whether Fox was "properly designated" to speak on G.A.'s behalf because counsel's failure to object didn't prejudice Arnold. Even an improper victim impact statement is only prejudicial if the sentencing court relied on it. *See State v. Sailer*, 587 N.W.2d 756, 762 (Iowa 1998). In his statement, Fox explained his involvement with the family, criticized Arnold's parenting decisions, and described G.A.'s condition from his personal experience as well as his training as an emergency responder.

In giving reasons for its sentence, the court blamed Arnold for not taking G.A. to a doctor despite months of debilitating infection and pain, which the court found "absolutely incredible." The court also cited the "incredibly upsetting" photographs of G.A.'s infected foot and groin tumors taken on the day of Arnold's arrest. Both the prosecutor and Fox asked for the maximum sentence. The presentence-investigation report also

recommended imprisonment because the risk assessments placed Arnold in the moderate to moderate/high ranges for recidivism.

Given the disturbing facts already in the trial record, Fox's statements did not change the sentencing decision. The sentencing court did not cite anything he said.[1] *Schooley*, 13 N.W.3d at 619. We rely on sentencing courts to "filter out improper or irrelevant evidence" from victim impact statements, which are by their nature "unabridged expression[s] of the impact of the offense." *Sailer*, 587 N.W.2d at 761, 764. This record was full of evidence showing the egregiousness of Arnold's actions and their devastating impact on G.A. *See State v. Sumpter*, 438 N.W.2d 6, 8–9 (Iowa 1989) (finding unauthorized impact statements from victim's aunts and uncles were "hostile and bitter" and allegedly "inflammatory" but nonprejudicial because they weren't outside what the court already knew). Thus, there is no reasonable probability that the sentence would have been different had Arnold's counsel successfully blocked Fox's statement. Arnold failed to show he was prejudiced by counsel's failure to object.

Arnold's second contention is that the PCR court applied a higher prejudice standard than the law requires, citing two sentences in its ruling. First, the court found certain evidence wouldn't "have changed the outcome of Arnold's case or sentence" and second, the court concluded, "Arnold has offered no convincing evidence . . . to overcome the presumption that his counsel was effective." From those references, Arnold argues the court required more than a "reasonable probability" that the outcome would be

---

[1] Arnold points out that the PCR court noted Fox's statement that G.A. "might lose her swollen and infected foot." But that was mentioned in the context of Arnold's contention that counsel was ineffective for not informing the sentencing court about his plan to take G.A. to a doctor as a mitigating factor. The sentencing court did not rely on that statement. *See Sailer*, 587 N.W.2d at 762.

different. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("A reasonable probability is a probability sufficient to undermine confidence in the outcome."). But Arnold did not raise this perceived deficiency to the PCR court, so it is not preserved. *Schooley*, 13 N.W.3d at 617; *see also* Iowa R. Civ. P. 1.904. Even if preserved, the PCR court cited the correct prejudice standard, and those statements read in context do not support Arnold's assertion that the court imposed a higher burden.

**AFFIRMED.**